**UNITED STATES of America,**
**Plaintiff,**

v.

**A MOTION PICTURE FILM ENTITLED "I AM CURIOUS—YELLOW" ("Jag Ar Nyfigen-Gul") (35 mm., Black and White, 6 Double Reels, 11,746 ft., Swedish soundtrack with English subtitles) Grove Press, Inc., Claimant.**

**No. 68 Civ. 266.**

United States District Court
S. D. New York.
May 3, 1968.

466

Robert M. Morgenthau, U. S. Atty. for Southern District of New York, for the United States of America; Lawrence W. Schilling, Asst. U. S. Atty., of counsel.

Richard Gallen and Edward deGrazia, for claimant.

## OPINION

THOMAS F. MURPHY, District Judge.

In this action brought pursuant to 19 U.S.C. § 1305[1] to forfeit and confiscate an imported Swedish motion picture

---

1. Section 1305 of Title 19, U.S.C., provides in pertinent part:

"All persons are prohibited from importing into the United States from any foreign country * * * any obscene book, pamphlet, paper, writing, advertisement, circular, print, picture, drawing * * * or other article which is obscene or immoral * * *. No such articles whether imported separately or contained in packages with other goods entitled to entry, shall be admitted to entry; and all such articles * * * shall be subject to seizure and forfeiture as hereinafter provided * * *.

"Upon the appearance of any such book or matter at any customs office, the same shall be seized and held by the collector to await the judgment of the district court as hereinafter provided; and no protest shall be taken to the United States Customs Court from the decision of the collector. Upon the seizure of such book or matter the collector shall transmit information thereof to the district attorney of the district in which is situated the office at which such seizure has taken place, who shall institute proceedings in the district court for the forfeiture, confiscation, and destruction of the book or matter seized. Upon the adjudication that such book or matter thus seized is of the character the entry of which is by this section prohibited, it shall be ordered destroyed and shall be destroyed. Upon adjudication that such book or matter thus seized is not of the character the entry of which is by this section prohibited, it shall not be excluded from entry under the provisions of this section.

"In any such proceeding any party in interest may upon demand have the

with English subtitles, entitled I AM CURIOUS—YELLOW, the claimant, Grove Press, Inc., moves for summary judgment. Its argument is two-fold: (1) that 19 U.S.C. § 1305 is unconstitutional on its face and as applied, and (2) that the motion picture cannot, as a matter of law, be held to be obscene, because it is self-evident that it is not, and because the government has admitted that the film has social value. The government defends the constitutionality of § 1305 both on its face and as applied to the facts in this case and denies that the film has any redeeming social value, admitting only that ideas are expressed in the film "that have value and the film can be said on that basis, taken in the abstract, to have value."[2]

## CONSTITUTIONALITY OF § 1305 ON ITS FACE.

█ The Court of Appeals in United States v. One Carton Positive Motion Picture Film Entitled "491", 367 F.2d 889 (2d Cir. 1966) unanimously upheld the constitutionality of § 1305, rejecting many of the arguments now advanced. It found that § 1305 met the standards enunciated in Freedman v. State of Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed. 2d 649 (1965) and rejected the argument that it was necessary for the statute to have built-in specific time limitations, a position taken by the claimant herein. 367 F.2d at 899. The court stated that the "only restraint contemplated by Section 305 [of the Tariff Act] is that reasonably necessary intelligently to select material for judicial review and reasonably necessary for a sound judicial resolution of the obscenity question. Nothing in the section precludes a prompt final judicial determination of obscenity. Indeed, the section is designed to avoid unnecessary delay at both the administrative and judicial stages of the proceedings." 367 F.2d at 900.

The claimant argues, however, that Teitel Film Corp. v. Cusack, 390 U.S. 139, 88 S.Ct. 754, 19 L.Ed.2d 966 (1968) impliedly rejects the constitutional analysis of § 1305 made in "491". In a per curiam opinion, the Supreme Court in striking down a Chicago ordinance, reiterated the Freedman rule as follows: "In Freedman v. State of Maryland, 380 U.S. 51, 58–59, 85 S.Ct. 734, 13 L.Ed.2d 649, we held ' * * * that a noncriminal process which requires the prior submission of a film to a censor avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system. * * * To this end, the exhibitor must be assured, by statute or authoritative judicial construction, that the censor will, within a *specified brief period*, either issue a license or go to court to restrain showing the film. * * * [T]he procedure must also assure a *prompt final judicial decision*, to minimize the deterrent effect of an interim and possibly erroneous denial of a license.' (Emphasis supplied.) The Chicago censorship procedures violate these standards in two respects. (1) The 50 to 57 days provided by the ordinance to complete the administrative process before initiation of the judicial proceeding does not satisfy the standard that the procedure must assure 'that the censor will, within a specified brief period, either issue a license or go to court to restrain showing the film.' (2) The absence of any provision for a prompt judicial decision by the trial court violates the standard that ' * * * the procedure must also assure a prompt final judicial decision * * *.' " 390 U.S. at 141–142, 88 S.Ct. at 755. The simple answer to claimant's argument is that *Teitel* reaffirms and repeats the rule in *Freedman*, which rule our Court of Appeals in "491" has told us § 1305 complies with. See United States v. 392

facts at issue determined by a jury and any party may have an appeal or the right of review as in the case of ordinary actions or suits."

2. Plaintiff's Memorandum of Law in Opposition to Claimant's Motion for Summary Judgment, p. 11.

Copies of Magazine Entitled "Exclusive", 253 F.Supp. 485 (D.Md.1966).

Claimant also argues that § 1305 is ineffective in a constitutional sense because it fails to assure an adversary hearing prior to seizure, which hearing, it says, is required by Marcus v. Search Warrant, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961); Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963) and Quantity of Copies of Books v. State of Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964). These cases, relating to the power of states to control the problem of the publication and sale of obscene material, and involving overly broad seizure warrants, loosely regulated administrative censorship and other abuses of due process amounting to unconstitutional prior restraints, have little or no relevancy to the seizures here or the power of Congress to regulate the importation into this country of obscene material in the manner set forth in § 1305. Under § 1305, no final valid restraint is imposed except by judicial determination. United States v. One Carton Positive Motion Picture Film Entitled "491", 248 F.Supp. 373, 376–377 (S.D.N.Y.1965). Further, it is clear that prior restraints are not *per se* unconstitutional. Times Film Corp v. City of Chicago, 365 U.S. 43, 81 S.Ct. 391, 5 L.Ed.2d 403 (1961).

### THE CONSTITUTIONALITY OF § 1305 AS APPLIED.

Claimant argues that "it was nineteen days after [the film's] arrival and detention at the Port of New York Customs Office before a court action was instituted by the Customs Bureau, to seek to prove the film was obscene and not protected; and it is now 115 days following that arrival and detention, and 100 days following the film's official 'seizure' that Claimant, Grove Press, has secured its first opportunity to contest the Bureau's censor's determination of 'obscenity', and demonstrate to a court that its film is not worthless 'obscenity', but a film plainly manifesting social value, requiring protection." [3]

The uncontested chronology of administrative action taken by the Bureau of Customs prior to the seizure of the film on January 15, 1968, and the subsequent legal steps are as follows:

December 30, 1967—The film arrived at John F. Kennedy International Airport, New York, N. Y.

January 4, 1968—A customs house broker acting for claimant entered the film under Entry #551718.

January 5, 1968—The film was delivered to the customs house broker for delivery to the United States Custom House at 201 Varick Street, New York City, for screening.

January 8, 1968—The film was received at 201 Varick Street.

January 12, 1968—The film was screened at 201 Varick Street by two officials of the Division of Import Compliance, Bureau of Customs.

January 15, 1968—The film was seized by the Bureau of Customs. On that same date claimant was advised in writing by the Bureau of Customs of the seizure and the retention of the film subject to disposition under § 305 of the Tariff Act.

January 19, 1968—The United States Attorney filed the instant complaint for forfeiture and a warrant was issued for arrest.

January 23, 1968—Claimant, as owner of the *res*, filed its notice of claim.

February 9, 1968—Claimant filed its answer.

February 9, 1968—Claimant made a motion returnable February 15th for an order pursuant to Rule 34, requiring the plaintiff to permit it to make a copy of the film.

February 9, 1968—Both the government and Grove moved before Chief Judge Sugarman for the assignment of this action to a judge for all pur-

---

3. Claimant's Memorandum in Support of Its Motion for Summary Judgment, pp. 12–13.

poses under Rule 2 of the General Rules of this court or for a preference under Rule 10 of the Calendar Rules.

February 16, 1968—Plaintiff served and filed a demand for trial by jury.

February 23, 1968—Chief Judge Sugarman wrote to the attorneys for both parties asking to be advised immediately upon any determination of claimant's motion then being considered by Judge Cooper.

March 1, 1968—Irving Fishman, Director of the Import Compliance Division, Office of the Regional Division of Customs, New York, was deposed by claimant.

March 6, 1968—Plaintiff's attorney notified Chief Judge Sugarman in writing that Judge Cooper had denied claimant's motion under Rule 34 by order dated March 4, 1968.

March 6, 1968—Chief Judge Sugarman entered an order pursuant to Rule 2 referring this case to me for all purposes.

March 14, 1968—Deposition of Irving Fishman continued and completed.

March 18, 1968—I wrote to both attorneys expressing my desire to go forward with the trial as expeditiously as possible and fixed Monday, April 15, 1968, as the trial date, and also suggested that I would be available for a conference.

March 19, 1968—Counsel for both parties advised me there was no need for a conference and that they were getting along amicably. Claimant's counsel indicated that he would shortly move for summary judgment.

April 3, 1968—A motion by claimant for summary judgment, returnable April 15, 1968, was filed and served.

April 8, 1968—I had a conference with both attorneys and it was suggested that I should view the motion picture since claimant was going to raise the issue that the film was not obscene on its face in its motion for summary judgment and advised me that it intended, in support of the motion, to serve additional affidavits relating to the social value of the film. It was then agreed that the return date of the motion should be April 25, 1968.

April 10, 1968—I viewed the film at 201 Varick Street. We were told that claimant had six or seven viewings of the film both in New York and in Washington, D. C.

April 12, 1968—Claimant served 14 affidavits of opinion to be considered on the motion for summary judgment on the issue of social value.

April 15, 1968—Claimant served an additional affidavit.

April 25, 1968—Motion for summary judgment was argued.

We doubt the sincerity of claimant's argument and a reading of the above chronology of events proves its falsity. It took Customs four days after receipt of the film to view it and seven days to seize it. The United States took four days thereafter to file its complaint. From that date to this, claimant is at fault. Claimant exercised its right to take 20 days to answer; it made an unnecessary motion to discover and obtain a copy of the film for printing; it had six or seven exhibitions of the film for the purpose of studying it and permitting its experts to view it; it took two full days, over the course of two weeks, deposing Fishman; and finally it made a motion for summary judgment instead of going to trial on April 15th. In connection with its motion for summary judgment, claimant, on April 12th, nine days after the motion was filed and three days before the return date, served 14 affidavits on the issue of social value, thus necessitating the adjournment of the oral argument to April 25th, ten days after the original return date. As was said in *"491"*, claimant "was largely responsible for any major 'delays' which occurred", 367 F.2d at 904, and will not now be heard to complain that the statute was unconstitutionally applied.

## OBSCENITY

Claimant contends that under the formula set forth by the Supreme Court in the case of A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney Gen. of Commonwealth of Mass., 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966), the film is not obscene as a matter of law. There the court stated that in order to deem a work obscene "three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." 383 U.S. at 418, 86 S.Ct. at 977. In its original motion papers, claimant argued that the government, through the deposition testimony of Mr. Fishman, had admitted that the film was not utterly without redeeming social value, and thus has failed to satisfy one of the three requisites announced in *Memoirs*. Even aside from this alleged "admission" by the government, claimant maintains that it has proven beyond dispute that the film has redeeming social value, as evidenced by 15 affidavits of opinion to this effect, which were submitted after the original moving papers.

Turning to claimant's contention that the government has admitted that the film is not utterly without redeeming social value, we think we can safely dispense with any recitation here of Mr. Fishman's statements regarding social value. Even assuming *arguendo*, that Mr. Fishman unequivocally stated, that in his opinion the film has some redeeming social value, this in no way mandates the conclusion that the government has waived its rights to contest the issue. What are commonly known as the "admissions of a party" fall into two general categories: (1) formal judicial admissions and (2) informal or ordinary admissions.[4] As the label implies, the first group refers to formal, intentional admissions of fact made in pleadings or in court.[5] They are not evidence but rather they obviate the need for the production of evidence on the particular point admitted and are generally considered to be conclusively binding upon the party making them.[6] Such admissions are usually made formally either in a party's pleading or in court by the party or his attorney.[7] Clearly, it is not within Mr. Fishman's scope of authority as an employee of the Bureau of Customs, to make such formal concessions in judicial proceedings brought by the government, which concessions go to the very heart of the law suit and which have such weighty consequences.

Informal or ordinary admissions on the other hand are statements by a party, not amounting to formal admissions, and are in the nature of statements which are inconsistent with the position taken by a party in a particular judicial proceeding.[8] These statements, usually made out of court and prior to trial,[9] are not conclusive,

---

4. See 9 Wigmore, Evidence § 2588 (3d ed. 1940); Richardson, Evidence §§ 294–296 (8th ed. 1955).

5. See 9 Wigmore, op. cit. supra note 4 at § 2588; Richardson, op. cit. supra note 4 at § 294.

6. 9 Wigmore, op. cit. supra note 4 at §§ 2588, 2590; Richardson, op. cit. supra note 4 at § 294.

7. 9 Wigmore, op. cit. supra note 4 at §§ 2588, 2594.

8. 4 Wigmore, Evidence § 1048 (3d ed. 1940); Richardson, op. cit. supra note 4 at §§ 295, 296.

9. Such admissions may be made during the course of judicial proceedings and are sometimes called informal judicial admissions, but they are not conclusive and are only receivable as mere evidence. Richardson, op. cit. supra note 4 at § 295.

and may only be used as would any other piece of evidence.[10] It is well established that statements made by an agent acting in behalf of a party are admissible in evidence against the party, if the agent was authorized to speak for the principal on the particular subject matter involved.[11] That is, whether the agent was acting within the scope of this authority. Even assuming *arguendo* that Mr. Fishman's statements were made while acting within the scope of his authority and are binding upon the government as informal admissions, they can hardly be made the premise for a judgment declaring a motion picture seized under § 1305 as "not of the character the entry of which is by this section prohibited", any more than the opinion by the same employee that the motion picture "is of the character the entry of which is by this section prohibited" would be determinative of the issue. The statute places the duty of adjudication upon the court. The judgment of the district court is based on all the evidence, including the film itself, presented to it and is not and cannot be bound in any way by the opinion of the Bureau of Customs or one of its employees.

■ Claimant also argues that the United States Attorney in his brief admitted that the film has social value. The pertinent part states that the *"plaintiff acknowledges that ideas are expressed in 'I AM CURIOUS' that have value and the film can be said on that basis, taken in the abstract, to have value.* But this acknowledgment by no means forecloses an adjudication that the film or portions of the film are obscene and Section 305 prohibits its importation and mandates its forfeiture." (Emphasis added).[12] This is a formal judicial admission.[13]

But does it amount to a concession that the motion picture has even a modicum of redeeming social value? On oral argument the Assistant United States Attorney denied that the admission went that far. At most it is a binding concession that ideas have value, a proposition that few will disagree with. The Supreme Court has not yet said that a work that has some redeeming social value can be equated to a work with some ideas. So far, the escape hatch for obscenity requires that the work have a modicum of redeeming social value.

■ Considering now the question of whether the film on its face can be adjudged non-obscene as a matter of law, thus entitling claimant to summary judgment, it might be well to begin by quoting Mr. Justice Harlan's very recent précis on the state of the law: "As the Court enters this new area of obscenity law it is well to take stock of where we are at present in this constitutional field. The subject of obscenity has produced a variety of views among the members of the Court unmatched in any other course of constitutional adjudication. Two members of the Court steadfastly maintain that the First and Fourteenth Amendments render society powerless to protect itself against the dissemination of even the filthiest materials. No other member of the Court, past or present, has ever stated his acceptance of that point of view. But there is among present members of the Court a sharp divergence as to the proper application of the standards in Roth [Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498],

10. 9 Wigmore, op. cit. supra note 4 at § 2588; 4 Wigmore, op. cit. supra note 8 at §§ 1048, 1057.

11. 4 Wigmore, op. cit. supra note 8 at § 1078; Richardson, op. cit. supra note 4 at §§ 314, 329.

12. Plaintiff's Memorandum of Law in Opposition to Claimant's Motion for Summary Judgment, p. 11.

13. See footnotes 5–7, supra and accompanying text.

supra,[3] Memoirs, supra,[4] and Ginzburg

3. *Roth* stated the test to be 'whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest.' 354 U.S. at 489 [77 S.Ct. 1304 at 1311] (note omitted).

4. *Memoirs* elaborated the *Roth* test as follows: 'it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value.' 383 U.S. at 418 [86 S.Ct. 975 at 977]. [Other footnotes omitted.]

v. United States, 383 U.S. 463, [86 S.Ct. 942, 16 L.Ed.2d 31] for judging whether given material is constitutionally protected or unprotected. Most of the present Justices who believe that 'obscenity' is not beyond the pale of governmental control seemingly consider that the *Roth-Memoirs-Ginzburg* tests permit suppression of material that falls short of so-called 'hard core pornography,' on equal terms as between federal and state authority. Another view is that only 'hard core pornography' may be suppressed, whether by federal or state authority. And still another view, that of this writer, is that only 'hard core pornography' may be suppressed by the Federal Government, whereas under the Fourteenth Amendment States are permitted wider authority to deal with obnoxious matter than might be justifiable under a strict application of the *Roth-Memoirs-Ginzburg* rules.

\* \* \* \* \* \*

"The upshot of all this divergence in viewpoint is that anyone who undertakes to examine the Court's decisions since *Roth* which have held particular material obscene or not obscene would find himself in utter bewilderment." Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195; Interstate Circuit, Inc. v. City of Dallas (United Artists Corp. v. City of Dallas), 390 U.S. 676, 88 S.Ct. 1298, 20 L.Ed.2d 225 (Opinion of Mr.

Justice Harlan, concurring in *Ginsberg*, and dissenting in *Interstate* and *United Artists*, 88 S.Ct. 1313).

The film was exhibited to me on April 10, 1968. To me it was repulsive and revolting, the sexual scenes having no relationship to the story line or plot—if there was one. These sexual scenes ranged from copulating in a tree; copulating astride a balustrade of a public building and in the nude in a room; with other scenes of buggery, cunnilinction and fellatio, all in the nude. The final scene, in conformity to the dominant theme, shows the female lead performing an orchiectomy or peotomy or both on her murdered lover with a kitchen carving knife.

If the film has a message, whether it is public poll taking on the social structure of the Swedish society or the advocacy of non-violence or anti-Francoism, I would suspect it is merely dross, providing a vehicle for portraying sexual deviation and hard core pornography. Cf. Landau v. Fording, 245 Cal.App.2d 820, 54 Cal.Rptr. 177 (1966), aff'd, 388 U.S. 456, 87 S.Ct. 2109, 18 L.Ed.2d 1317 (1967). In my opinion, the average person applying community standards would find that the dominant theme, taken as a whole, appeals to prurient interest, is insulting to the American public and is devoid of social value. But we judges are not critics or censors or literary experts and, except in our capacity as private citizens, are not competent to render an independent judgment, nor should we impose our will or private opinions on the will of others. Whether or not the motion picture in question appeals to prurient interest and is beyond contemporary community standards is clearly a question of fact and questions of fact cannot be determined on motions for summary judgment.

At this point, claimant is not entitled to summary judgment, absent a showing that no factual dispute exists as to the presence of redeeming social value. That is, unless it can prove that social value exists as a fact beyond dispute, summary judgment is not available. This claim-

ant has attempted to do *through opinions* contained in 15 affidavits of prominent persons in the educational, entertainment and motion picture fields. However, this attempt falls far short of the mark. These affidavits themselves raise questions of fact. Expert testimony, like all testimony, should be subject to the crucible of cross-examination. Having viewed the film and being cognizant that "redeeming social value" is not a phrase capable of quantitative measurement, we feel that reasonable men, notwithstanding the opinions of claimant's experts, could disagree on the social worth of this film. Accordingly, we find that also as to the third element of the *Memoirs* test, a triable issue of fact exists.

The motion for summary judgment is denied in all respects.

This is an order. No settlement is necessary.