**UNITED STATES of America,**
**Plaintiff,**

**v.**

**A MOTION PICTURE FILM ENTITLED "PATTERN OF EVIL" (35 mm., Color, 4 Reels, 6400 Ft., English Dialogue Soundtrack), Defendant.**

**No. 69 Civ. 2157.**

United States District Court
S. D. New York.

Sept. 2, 1969.

Robert M. Morgenthau, U. S. Atty., for plaintiff; by Richard S. Toder, and Peter R. De Filippi, New York City, of counsel.

Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N. Y., for defendant; by Herald Price Fahringer, Buffalo, N. Y., of counsel.

## OPINION

POLLACK, District Judge.

*The Motion*

Claimant is moving to dismiss the complaint in a forfeiture proceeding brought by the United States against the film "Pattern of Evil" under § 305 of the Tariff Act, 19 U.S.C. § 1305 (1964). The claimant seeks dismissal on several grounds, *inter alia*:

1. Section 305 is unconstitutional on its face in that the terms "obscene" and "immoral" are vague; the statute ef-
fects a prior restraint on materials protected by the first amendment; there is no specified time period for the actions of customs officials, or for expeditious action by the courts; the statute is not limited to proscribing sales to minors, pandering, etc.; mere possession of obscene material is made unlawful in contravention of a recent Supreme Court ruling.

2. Section 305 has been unconstitutionally applied in the case at bar because the confiscation proceedings have been delayed an "inordinate" amount of time.

3. "Pattern of Evil" is not obscene as a matter of law because it has redeeming social value; does not appeal to a prurient interest in sex; and does not exceed customary limits of candor.

Claimant has demanded an adversary hearing on the above issues and the Government demanded a jury. The parties requested time to submit affidavits which were filed on September 23, 1969 and requested an opportunity for final argument which was made on September 25, 1969. The Court has viewed the accused film, and has, at the request of claimant, viewed a motion picture entitled "I Am Curious-Yellow".

The matter is before the Court in the posture of a motion for summary judgment. Fed.R.Civ.P. 12(b).

*The Constitutionality of § 305 on Its Face*

The majority of the grounds on which claimant contends that § 305 is unconstitutional on its face are without merit and have been so held. United States v. One Carton Positive Motion Picture Film Entitled "491", 367 F.2d 889 (2d Cir. 1966) (hereinafter cited as "491"); United States v. A Motion Picture Film Entitled "I Am Curious-Yellow", 285 F.Supp. 465 (S.D.N.Y.1968), rev'd on other grounds, 404 F.2d 196 (2d Cir. 1968) (hereinafter cited as "I Am Curious").

There are only three claims raised by claimant which were not raised in the cases cited above.

The first, is plaintiff's contention that Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967) has changed the rule of *Roth* and its progeny with the effect that nothing obscene can be banned unless there are elements of pandering, in connection with the sale of the material; the material is sold without restriction to minors; or it is impossible for an unwilling individual to avoid exposure to the material.

Claimant has misread *Redrup*. In that case, the Supreme Court upon reviewing the record below found that the materials in issue were *not* obscene, and that therefore they could not be regulated by the state unless the state statutory scheme was limited to proscribing pandering, sales to juveniles or unwanted exposure of the material to the public. *See* Ginsberg v. New York, 390 U.S. 629, 634 n. 3, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968). The statute in question was not so limited and the conviction for selling obscene material was reversed. *Redrup* does not change the *Roth* rule that the distribution of obscenity can be prohibited. The issue in the case at bar is whether "Pattern of Evil" is obscene, and upon a judicial determination that it is obscene there is no doubt that its importation can be prevented.

Claimant's second contention is that § 305 is fatally defective in that a brief time period is not specified within which customs officials must act, or in which the courts must render a decision on obscenity. In *"491"* the Court of Appeals faced with the same contention, held that § 305 complied with the standards set up by the Supreme Court in Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). The Supreme Court in *Freedman* held that " * * * a noncriminal process which requires the prior submission of a film to a censor avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system." 380 U.S. at 58–59, 85 S.Ct., at 738–739. The Court went on to state that

[t]o this end, the exhibitor must be assured, by statute or authoritative judicial construction, that the censor will within a specified brief period, either issue a license or go to court to restrain showing the film. *Id.*

The Court also noted that a "prompt final judicial decision" must follow in order "to minimize the deterrent effect of an interim and possibly erroneous denial of a license". 380 U.S. at 59, 85 S.Ct., at 739. The *Freedman* Court also observed that the " * * * nature of the motion picture industry may suggest different time limits for a judicial determination" at 61, 85 S.Ct., at 740, and that because "[i]t is common knowledge that films are scheduled well before actual exhibition" it might be sufficient to require submission of a film "far enough in advance so that the exhibitor could safely advertise the opening on a normal basis". 380 U.S. at 61, 85 S.Ct., at 740.

In *"491"* the Court of Appeals held that § 305 complied with the mandates of *Freedman*. The Court noted (367 F.2d at 900):

The only restraint contemplated by Section 305 is that reasonably necessary intelligently to select material for judicial review and reasonably necessary for a sound judicial resolution of the obscenity question. Nothing in the section precludes a prompt final judicial determination of obscenity. Indeed, the section is designed to avoid unnecessary delay at both the administrative and judicial stages of the proceedings.

The Court also held that § 305 was constitutionally applied to "491".

In United States v. One Book Entitled "The Adventures of Father Silas", 249 F.Supp. 911 (S.D.N.Y.1966), the Court held that § 305 had been unconstitutionally applied because a three and one-half month delay was occasioned by customs officials in instituting the confis-

**200**

cation proceeding. In so holding, however, the Court noted that:

> We deal here with a federal statute, with authority to construe and a duty to preserve if possible. (citation omitted). Accordingly, the absence from the statute of a "specified brief period" is a gap suitably supplied by federal judicial construction * * *. United States v. One Book Entitled The Adventures of Father Silas, 249 F.Supp. at p. 923, n. 26.

Since the decision in *"491"*, the Supreme Court in Teitel Film Corp. v. Cusack, 390 U.S. 139, 88 S.Ct. 754, 19 L.Ed.2d 966 (1968) reiterated the standards in *Freedman* requiring prompt administrative and judicial celerity in dealing with an accused film, but held that the state statute before it in *Teitel* had violated the standards in two ways.

> (1) The 50 to 57 days provided by the ordinance to complete the administrative process before initiation of the judicial proceeding does not satisfy the standards that the procedure must assure "that the censor will, within a specified brief period, either issue a license or go to court to restrain showing the film".
>
> (2) The absence of any provision for a prompt judicial decision by the trial court violates the standard " * * * the procedure must also assure a prompt final judicial decision * *." Teitel Film Corp. v. Cusack, 390 U.S., at 140–142, 88 S.Ct., at 756.

The fatal flaw in the state statute considered in *Teitel* was that the *specified* period was not brief and was itself the cause of the administrative delay. The Court of Appeals in *"491"* found that there was no need to have a built-in time limit under the standards of *Freedman* so long as the statute was construed and applied with a view to prompt administrative and judicial action. *See also,* "I Am Curious", 285 F.Supp. at 465, where the district court specifically rejects the theory that *Teitel* warrants a holding that § 305 is unconstitutional on its face.

■ Claimant's third contention is that § 305 by proscribing "importation" of a film is restraining the mere "possession" of obscene material, a result which is unconstitutional under the recent decision in Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). In that case the Court held that the individual's right to read or observe what he pleases in the privacy of his home cannot be interfered with by obscenity legislation and that a state statute imposing criminal sanctions upon the mere knowing possession of obscene material is unconstitutional.

Claimant argues that it [Chelsea Productions] is only an importer and not a distributor of films, and that at this time it does not know whether "Pattern of Evil" will in fact be distributed because it may prove to be financially unprofitable or commercially unfeasible to distribute the film. Consequently, argues claimant, application of § 305 to it will result in making mere possession of the film subject to the statute.

This contention appears to be frivolous. Claimant has not stated that it imported the film in question with no intent to distribute it commercially. Manifestly, this is its intent, and counsel for claimant conceded this on oral argument. The fact that it may ultimately find distribution to be an unprofitable course of action is immaterial.

Conceivably, under the rule of Stanley v. Georgia, § 305 might pose a constitutional question where importation into the country of an obscene film or book is made for private use in the importer's home. However, this question is not raised by the case at bar and there is no occasion to speculate on such a hypothesis. *See, e. g.,* United States v. Raines, 362 U.S. 17, 21–22, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960).

■ The Court is satisfied that the Congress intended that the statute should stand in any event with regard to importation for commercial use, even if its application to an importation for private use would be held unconstitutional. Ap-

plication of the statute to the commercial importer is not so inextricably "interwoven" with its application to the private importer that the former cannot stand alone. *See* Dorchy v. Kansas, 264 U.S. 286, 288–291, 44 S.Ct. 323, 68 L.Ed. 686 (1924); *See generally* H. M. Hart & H. Wechsler, The Federal Courts and the Federal System 172–192 (1953). Consequently, the claimant may not be heard to attack the statute since it applies constitutionally to it. United States v. Raines, *supra*, 362 U.S., at 23, 80 S.Ct. 519.

Accordingly, the Court holds that the arguments of unconstitutionality of § 305 on the face of the statute are without merit.

### Section 305 as Applied

■ The papers tend to show that the government was delayed by the importer in the bringing of this suit against "Pattern of Evil". More than two months elapsed after its entry into the port of New York before the film was made available by the claimant to Customs in form to be viewed. The seizure followed promptly after the viewing, and the United States Attorney filed the complaint in this proceeding with reasonable dispatch. The delay since the filing of suit was caused by claimant's unsuccessful attempts to negotiate a settlement with the government. In *"491"* and in *"I Am Curious"*, the courts rejected similar claims. *Compare*, United States v. One Book Entitled "The Adventures of Father Silas", 249 F.Supp. 911 (S.D.N.Y.1966), where Judge Frankel found that the delay was caused by the improper application of the statute and held the statute unconstitutionally applied. No facts evidencing unreasonable delay, either administrative or judicial, have been shown by the claimant. There has been no sense of urgency in the procedure of the claimant* and the statute has not been, as a matter of fact, unconstitutionally applied.

### Obscenity

■ Before a film can be held obscene, three elements must coalesce: "it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Massachusetts, 383 U.S. 413, 418, 86 S.Ct. 975, 977, 16 L.Ed.2d 1 (1966).

■ As a general rule, the presence or absence of such elements pose fact questions to be submitted to a jury. However, the Supreme Court has held that the question of obscenity is ultimately a constitutional question and therefore the jury's findings do not have their usual conclusive effect. *See* Jacobellis v. Ohio, 378 U.S. 184, 188, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964); "I Am Curious", 404 F.2d at 200. The judge to whom a summary judgment motion is addressed, should, consequently, dismiss the complaint if no triable issue of fact is raised on the question of obscenity.

Where the Court is of the view that the accused film possesses a modicum of social value, summary judgment must be granted to the claimant. *See* "I Am Curious-Yellow", *supra;* "491", *supra.* If on the other hand, issues of material fact are raised in respect of each of the three elements of obscenity, summary judgment on affidavits and exhibits is inappropriate and a trial of the issues is requisite.

■ The expert opinions submitted as evidence are in conflict on the point whether social value inheres to this film. The government has submitted with the film, the affidavit of the Director of the Division of Imports Compliance of the

---

* Claimant cannot consistently assert that it does not intend to distribute "Pattern of Evil" commercially, and at the same time complain of harm caused by the alleged delay in the application of the statute.

United States Bureau of Customs in support of its contention that the film in issue has no redeeming social value. In opposition thereto, claimant has submitted the affidavit of a psychologist ostensibly qualified in the field of obscenity. From these opposing proofs, the Court is asked to determine whether genuine issues of material fact exist or whether "Pattern of Evil" is utterly without redeeming social value.

The most liberal partisan of the broadest view of First Amendment rights would find insuperable difficulty in asserting that this film does not pose a question of fact whether it debases the community and is not unnecessarily offensive to the visual, intellectual and emotional sensibilities of the average person. The frontiers of constitutional protection of sex perversion in action sequences have been pushed far and wide by the frenzied competition for ever greater exhibitionism. Whether the constitutional privilege has finally been breached by a film and whether rational judgment dictates a retreat from the unbridled permissiveness employed, must be determined here by triers of the facts. The intention of the producer and the way in which that intent was portrayed will be part of the tests to be administered. Is it frank expression entitled to protection or is it intended and exhibited filth which should be confiscated for the salutary reasons supporting obscenity laws?

After viewing the film, the Court finds that it is highly doubtful that a genuine plot or theme exists and it is fairly arguable that, devoid of plot, the purpose, intent, and effect of the film are obscenity for the sake of lewdness and lasciviousness. Indeed it is highly questionable whether responsible exhibitors would show such a picture.

Claimant has admitted on oral argument that the plot may be "contrived, threadbare" and "ill-conceived", but argues that the social value inherent in the film lies in its existence as a form of entertainment. Acceptance of this argument would eradicate the "redeeming social value" requirement in the area of obscenity, for everything probably has some entertainment value to someone. A triable issue has been raised here on whether the film lacks all social redeeming value.

Triable issues of fact have been raised also on the questions of whether the film appeals to a prurient interest in sex and whether its representation of sex goes beyond customary limits of candor.

 Claimant has argued that because the sexual activity portrayed in "Pattern of Evil" is (in claimant's view) portrayed less explicitly than similar activity in "I Am Curious", the film cannot lawfully be found to go beyond customary limits of candor. Claimant's argument is unpersuasive for two reasons. The Court in *"I Am Curious"* ruled that the film possessed a modicum of social value and for that reason could not be declared obscene; this ruling made it unnecessary to reach the question of whether it was patently offensive. The jury and the trial judge did in fact find that the film affronted community standards relating to the description and portrayal of sexual matters. Secondly, the sex-related scenes in "I Am Curious", comprised only a minor fraction of the film. It is, however, a question for the triers of fact, whether the repetitive nature of the sex scenes in "Pattern of Evil", forming the major portion of the film, is patently offensive.

The claimant points to the teaching of "I Am Curious" that it is proper to compare motion pictures with books held not obscene in judging their legality. However, it has not as yet been held that such a comparison concludes the question. There is a very wide distinction between what is read in private and what is seen publicly in motion (action speaks louder than any words silently read). Motion picture viewing undeniably carries a greater impact with a wider audience and leaves less room for indulgence of the portrayal than the reading of books or magazines in private.

All these questions must be resolved on the facts before the trial judge can evaluate the constitutionality of the result on the law.

Accordingly, claimant's motion for summary judgment is hereby denied.

So ordered.