**UNITED STATES of America et al.,**
**Plaintiffs,**

**v.**

**Various ARTICLES OF "OBSCENE" MERCHANDISE More Fully Described in Schedule No. 494 of 1965–1970, Series, Defendants and Counterclaimants.**

**No. 68–Civ.–2972.**

United States District Court,
S. D. New York.

June 8, 1970.

Fred Cherry, Santurce, Puerto Rico, pro se.

Peter Alan Herbert, Asst. U. S. Atty., New York City (Robert M. Morgenthau, U. S. Atty. for Southern District of New York, Richard S. Toder, Asst. U. S. Atty., New York City, of counsel), for plaintiffs.

Melvin L. Wulf and Joel M. Gora, for the American Civil Liberties Union and the New York Civil Liberties Union, respectively, as amici curiae.

Before MOORE, Circuit Judge and CANNELLA and FRANKEL, District Judges.

MOORE, Circuit Judge.

This is an action brought by the United States pursuant to section 305 of the Tariff Act of 1930, 19 U.S.C. § 1305, for the forfeiture of certain obscene material addressed to Fred Cherry (claimant) and seized by the government upon its entry into the United States at the port of New York. On the motion of Mr. Cherry and with the consent of the government, this three-judge court was convened for the purpose of considering the constitutional challenges by the claimant, raised by counterclaim, to the provisions of § 305 of the Tariff Act. Claimant seeks a declaration that the statute is unconstitutional, and further seeks injunctive relief against the United States restraining its agents from enforcing § 305 against him.

For purposes of decision upon this counterclaim, it was stipulated by the parties that the articles sought to be imported are obscene, that claimant imports such articles (magazine, books and advertising material) for his own private use and not for resale or commercial display, that claimant has from time to time exchanged such articles with other adults well known to him without the payment of money or utilization of advertising, and that the retail value of the articles imported by claimant on any single occasion has never exceeded the sum of $10. The provisions of § 305, the statute claimed to be unconstitutional, insofar as relevant to this decision, are set out in the margin.[1]

The counterclaim alleges unconstitutionality of the statute in the following respects:

(1) the statute prohibits importation of obscene material by "all persons" whether or not for commercial dissemi-

---

1. § 1305, of Title 19, United States Code, provides, in pertinent part:

§ 1305. Immoral articles; prohibition of importation—

(a) All persons are prohibited from importing into the United States from any foreign country * * * any obscene book, pamphlet, paper, writing, advertisement, circular, print, picture, drawing, or other representation, figure, or image on or of paper or other material, or any cast, instrument, or other article which is obscene or immoral * * * No such articles whether imported separately or contained in packages with other goods entitled to entry, shall be admitted to entry; and all such articles and, unless it appears to the satisfaction of the collector that the obscene or other prohibited articles contained in the package were inclosed therein without the knowledge or consent of the importer, owner, agent, or consignee, the entire contents of the package in which such articles are contained, shall be subject to seizure and forfeiture as hereinafter provided: * * * *Provided, further,* That the Secretary of the Treasury may, in his discretion, admit the so-called classics or books of recognized and established literary or scientific merit, but may, in his discretion, admit such classics or books only when imported for noncommercial purposes.

Upon the appearance of any such book or matter at any customs office, the same shall be seized and held by the collector to await the judgment of the district court as hereinafter provided; and no protest shall be taken to the United States Customs Court from the decision of the collector. Upon the seizure of such book or matter the collector shall transmit information thereof to the district attorney of the district in which is situated the office at which such seizure has taken place, who shall institute proceedings in the district court for the forfeiture, confiscation, and destruction of the book or matter seized. Upon the adjudication that such book or matter thus seized is of the character the entry of which is by this section prohibited, it shall be ordered destroyed and shall be destroyed. Upon adjudication that such book or matter thus seized is not of the character the entry of which is by this section prohibited, it shall not be excluded from entry under the provisions of this section.

In any such proceeding any party in interest may upon demand have the facts at issue determined by a jury and any party may have an appeal or the right of review as in the case of ordinary actions or suits.

nation and thereby infringes rights guaranteed to him by the First Amendment to receive such material for his own private use;

(2) the statute imposes unreasonable burdens on the exercise of his First Amendment rights as a noncommercial importer by virtue of the costly and time-consuming procedures through which he must assert such rights, and because the effect of the venue provisions is such that he cannot challenge the censor's determination of obscenity except by judicial proceedings at a considerable distance from his home; and

(3) section 305 fails to assure the prompt and speedy administrative determinations and final judicial decisions which are required by the First and Fifth Amendments.

We agree with the first contention for the reasons which follow.

## I. Background

The focus of claimant's major attack on the constitutionality of § 305 is the Supreme Court's decision last year in Stanley v. Georgia, 394 U.S. 557, 89 S. Ct. 1243, 22 L.Ed.2d 542 (1969). In Stanley, the Court invalidated a Georgia obscenity statute which allowed the state to punish the mere possession of obscene matter because it violated the individual's First Amendment rights and the right of privacy.

In its broadest sense, claimant's argument is premised on the notion that in Stanley the Supreme Court completed a

process, hinted at in Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967) of shifting the ground for decision in obscenity cases away from the doctrine announced in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) that "obscenity" is excepted from the First Amendment protection of free speech and press, to a more traditional balancing-of-interest [2] approach. In the Roth majority opinion, five members of the Court held "that obscenity is not within the area of constitutionally protected speech or press." 354 U.S. at 485, 77 S.Ct. at 1309. Since that decision, beleaguered courts, both state and federal, have joined the struggle to determine just what manner of material could invoke the suspension of First Amendment freedom guarantees by virtue of being "obscene". Because "obscenity" could not enjoy the protection of the First Amendment—an important foundation stone of fundamental liberty in our constitutional system—the definition of that term became the central battleground. The Supreme Court was understandably reluctant to provoke unwise incursions by government into the areas of free speech and thought, and every justice sitting on that Court since 1957 has individually endeavored to set restrictions on the scope of the new exception.[3] Success in the area of definitions has been elusive and confusion has reigned supreme.[4]

Traditional First Amendment analysis [5] has been applied, however, in those

---

2. E. g., NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 463, 466, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); Thornhill v. Alabama, 310 U.S. 88, 96, 60 S.Ct. 736, 84 L.Ed.2d 1093 (1940); Schneider v. State of New Jersey, 308 U.S. 147, 161, 162, 60 S.Ct. 146, 84 L.Ed. 155 (1939).

3. See the opinion of Mr. Justice Harlan in Interstate Circuit, Inc. v. City of Dallas, 390 U.S. 676, 704–705 & n. 1, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968) (concurring opinion).

4. See generally Rogge, "[T]he High Court of Obscenity" parts I and II, 41 Colo.L.

Rev. 1 ff. and 201ff (1969); Note, More Ado About Dirty Books, 75 Yale L.J. 1364 (1966).

5. See Emerson, Toward a General Theory of the First Amendments, 72 Yale L.J. 877 (1963). Speech of any kind is generally protected, except when the circumstances of the case show a legitimate state interest sufficiently strong to override the free speech interest. See cases cited note 2, supra. But see Chaplinsky v. New Hampshire, 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) from which the "exception" theory of Roth derived.

cases subsequent to *Roth* in which the initial definitional determination produced the conclusion that the material under consideration, although offensive, did not fit within the prevailing definition of "obscenity". E. g., Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966); Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968). Thus in Redrup v. New York, supra, the Court pointed to three legitimate concerns of the government which may simply outweigh the individual's First Amendment considerations when something akin to "obscene" material is at issue.

The opinion in *Redrup* incorporated the decision of three cases arising in three different states. Two of the cases involved criminal prosecutions for public sale of two books—"Lust Pool" and "Shame Agent"—and two magazines— "High Heels" and "Spree". The third case involved civil forfeiture upon a judicial declaration that several issues of a number of men's magazines were obscene. The short per curiam opinion [6] first observed that

> [i]n none of the cases was there a claim that the statute in question reflected a specific and limited state concern for juveniles. See Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645; cf. Butler v. Michigan, 352 U.S. 380, 77 S.Ct. 524, 1 L.Ed.2d 412. In none was there any suggestion of an assault upon individual privacy by publication in a manner so obtrusive as to make it impossible for an unwilling individual to avoid exposure to it. Cf. Breard v. Alexandria, 341 U.S. 662, 71 S.Ct. 920, 95 L.Ed. 1233; Public Utilities Comm'n v. Pollack, 343 U.S. 451, 72 S.Ct. 813, 96 L.Ed. 1068. And in none was there evidence of the sort of "pandering" which the court found

significant in Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31.

386 U.S. at 769, 87 S.Ct. at 1416. Part I of the *Redrup* opinion ended there. Part II began with the Court's conclusion "that the cases can and should be decided upon a common and controlling fundamental constitutional basis * * * We have concluded, in short, that the distribution of the publications in each of these cases is protected by the First and Fourteenth Amendments from governmental suppression, whether criminal or civil, *in personam* or *in rem.* [footnote omitted]." The opinion for seven of the justices ended after two short paragraphs following that statement. The first of those paragraphs sketched the four different approaches to the "obscenity" question favored by the nine members of the Court then sitting. There followed a final, somewhat cryptic paragraph:

> Whichever of these constitutional views is brought to bear upon the cases before us, it is clear that the judgments cannot stand. Accordingly, the judgment in each case is reversed.

Thus—ostensibly at least—"Lust Pool" and "Shame Agent" could not even be considered "hard-core pornography" under the "But know it when I see it" approach of Justice Stewart.[7] No analysis was offered to distinguish "Lust Pool", for example from similarly transparent pornographic titles which had frequently been held to sustain obscenity convictions and forfeitures in the lower courts. The Court did not in so many words, declare these books "not obscene". Instead it held simply that "the judgments cannot stand." The thought occurs that one may conclude from *Redrup* that, although obscenity is not protected by the First Amendment,

---

6. The opinion reflected the judgment of seven members of the Court. Justices Harlan and Clark dissented, believing that the cases should have been decided on different grounds. 386 U.S. at 771, 87 S.Ct. 1414.

7. Jacobellis v. Ohio, 378 U.S. 184, 197, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964) (concurring opinion).

possibly nothing is really obscene. In the two succeeding Supreme Court terms, 21 obscenity judgments were reversed on the authority of *Redrup*, most without opinion.[8]

Aside from the possible implications of a perhaps strained reading of *Redrup*, the most reasonable inference to be drawn from that case is that it was meant to serve as a simple summary of the Court's past teaching in the general area of obscenity; i. e., that obscenity could claim no protection from the First and Fourteenth Amendments, and that borderline or "soft-core" material could be regulated, but only insofar as a valid state interest outweighed First Amendment considerations under the traditional balancing approach. However, Stanley v. Georgia now instructs that truly obscene material *can* invoke constitutional protection, at least in certain situations. Moreover, *Stanley* referred to *Redrup* only for the proposition that certain public interests may justify governmental interference with the public distribution of "obscene material." 394 U.S. at 567, 89 S.Ct. 1243. The clear implication is that orthodox First Amendment considerations are once again of paramount importance, *Roth* notwithstanding, even where the publications in issue are concededly "obscene".

## II. *Public versus Private Uses of Obscene Matter*

■ The narrow holding of the *Stanley* decision was "that the First and Fourteenth Amendments prohibit making mere private possession of obscene material a crime." 394 U.S. at 568, 89 S.Ct. at 1249. The decision was grounded on "the individual's right to read or observe what he pleases," *id.*, and the concomitant notion that "the Constitution protects the right to receive information and ideas * * * regardless of their social worth. * * *" 394 U.S. at 564, 89 S.Ct. at 1247. Writing for the Court, Mr. Justice Marshall distinguished *Roth* on the ground that "that case dealt with public distribution of obscene materials and such distribution is subject to different objections," *id.* at 567, 89 S.Ct. at 1249, noting the danger that such material "might fall into the hands of children, see Ginsberg v. New York, *supra*, or that it might intrude upon the sensibilities or privacy of the general public [citing *Redrup, supra*]." Thus, although declaring that "*Roth* and the cases following that decision are not impaired by today's holding," Justice Marshall attributed to *Roth* a traditional First Amendment rationale to assure its validity while withdrawing from the theory of an absolute exception for obscenity so clearly discerned in the First Amendment by the majority in *Roth*. Legitimate public interests simply outweigh the distributor's rights to freedom of speech and press. Those interests do not, however, outweigh the individual's right to personal freedom. "Whatever the power of the state to control public dissemination of ideas inimical to the public morality, it cannot constitutionally premise legislation on the desirability of controlling a person's private thoughts." 394 U.S. at 566, 89 S.Ct. at 1249.

■ By way of analysis similar to ours here, at least two three-judge district courts recently have concluded that in *Stanley* the Supreme Court indicated an intention to limit *Roth* by returning to straightforward First Amendment theory and restricting governmental regulation of obscenity to such statutes as are directed to the protection of children, the prevention of assaults on the sensibilities of the unwilling public,

---

8. Rogge, "[T]he High Court of Obscenity" I, 41 Colo.L.Rev. 1 (1969) contains an appendix listing the titles of books, magazines and films considered non-obscene by the Supreme Court. Among the books which could not sustain convictions for commercial distribution of obscenity subsequent to *Redrup* were such delightful titles as "Sex Life of a Cop", "Lust Job", "Bayou Sinner", "Sin Hooked", "Lust Hungry", "Flesh Avenger", and "Orgy Club". *Id.* at 55–56.

and the prohibition of pandering through unsolicited mailings of offensive material which intrude upon the privacy of individuals. Karalexis v. Byrne, 306 F.Supp. 1363, 1366–1367 (D. Mass.1969), appeal argued April 30, 1970, 38 U.S.L.W. 3443 (May 12, 1970); Stein v. Batchelor, 300 F.Supp. 602, 606 (N.D.Tex.1969). We are not required to adopt that broad conclusion in the case at bar, but for the narrow question before us for decision, we think the implications of *Stanley* are clear. Where, as here, a federal statute by its terms prohibits importation by an individual of obscene material for his own private use and enjoyment in his own home, such a broad prohibition offends the First Amendment and must be held unconstitutional. *See* United States v. Thirty-Seven Photographs, 309 F.Supp. 36 (C.D.Cal.1970), appeal docketed, 38 U.S.L.W. 3433 (May 5, 1970).

### III. § 305

■ Section 305 declares that "[a]ll persons are prohibited from importing * * * any obscene book, pamphlet * * * ", etc. Thus the statute's sweep brings within its prohibition all persons whether or not they intend the obscene material for public dissemination. Since the government has stipulated that the present claimant imported no more than one copy of each item admitted to be obscene, and that he intended them only for his own private use and for possible non-commercial exchange with "like-minded adults known to him," we must look to *Stanley* and not to *Roth* for instruction. The Court, after noting a legitimate state interest in preventing the dangers attendant upon public distribution of obscenity, stated that "[n]o such dangers are present" in possession of obscene material for private use. Even so in the case at bar. There is no suggestion that Mr. Cherry's single copy of each magazine he imports poses a danger of falling into the hands of children. Nor is there any threat of intrusion upon the privacy of others by virtue of such importation, much less any

aspect of "pandering". We conclude that there is no governmental interest evident from this statute sufficient to override the claimant's "right to receive information and ideas, regardless of their social worth. * * * " As applied in these circumstances, § 305 is unconstitutional.

### *Scope of Relief*

■ Decisions within this Circuit have upheld the constitutional validity of the § 305 provisions regulating importation for commercial distribution. *E. g.,* United States v. One Carton of Positive Motion Picture Film Entitled "491", 367 F.2d 889, 898 (2d Cir. 1966); United States v. A Motion Picture Film Entitled "Pattern of Evil," 304 F.Supp. 197 (S.D.N.Y.1969). Our ruling today need not affect the statute in that context. Although the problem with the statute—that it applies on its face to conduct which it cannot constitutionally proscribe—is one of overbreadth, our construction of the section to apply only to importations for commercial distribution cures the overbreadth as it affects the present claimant. In most circumstances, it is well "never [to] formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." United States v. Raines, 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524 (1960). In the area of First Amendment freedoms, however, an exception has been carved to allow the constitutional issue to be raised with no requirement that the person attacking the statute demonstrate that his own specific conduct should necessarily be privileged, *e. g.,* Thornhill v. Alabama, 310 U.S. 88, 97–98, 60 S.Ct. 736, 84 L. Ed. 1093 (1940); NAACP v. Button, 371 U.S. 415, 432–433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), because the existence and potential enforcement of the vague or overbroad statute may inhibit the exercise of protected rights, *see* Dombrowski v. Pfister, 380 U.S. 479, 487, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). In order to afford relief in an individual case of this kind, a court may

find it necessary to strike down the whole statute. *See, e. g.,* Aptheker v. Secretary of State, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964). This is in effect the course taken in United States v. Thirty-Seven Photographs, *supra,* when the court was faced with a § 305 seizure of obscene photographs imported for purposes of commercial distribution.

■ The case before us is not such a case. Claimant is himself within the privileged area. Narrowing the statute to forbid its application to him gives adequate relief and assures others of the protection for similar conduct. *Cf.* Dombrowski v. Pfister, 380 U.S. at 491 n. 7, 85 S.Ct. 1116. Moreover, the line between commercial and other importations extends a distinction to which the Congress was sensitive when it enacted § 305. The statute, as written, provided (as it still does) that the Secretary of the Treasury may in his discretion admit "classics or books of recognized and established literary or scientific merit * * * when imported for non-commercial purposes." In sum, we discern no compelling practical reason to extend today's ruling beyond the statute's application to the importation of obscene matter for purposes other than commercial dissemination.

One final note. If by the decision in *Stanley* the Supreme Court meant to substitute the "legitimate state interest" rationale for the "obscenity exception" approach as the correct constitutional underpinning of the *Roth* decision, it may be that § 305 is unconstitutional even as it applies to importation for commercial distribution, in the absence of a government showing that one of the legitimate state interests summarized in *Redrup* will be infringed by commercial distribution subsequent to importation. See Karalexis v. Byrne, Stein v. Batchelor, *supra.* That question is not presented by the case at bar, and we indicate no opinion on its resolution.

### IV. *Conclusion*

Our decision that § 305 cannot constitutionally apply to claimant renders unnecessary a determination of the validity of his additional constitutional arguments. For the foregoing reasons, we hold that § 305 of the Tariff Act, 19 U.S.C. § 1305, is unconstitutional as applied to claimant, and the United States and its agents are hereby enjoined from enforcing its provisions against claimant Fred Cherry in relation to the various articles which are the subject of this case.

So ordered.