**UNITED STATES of America,**
**Plaintiff,**

v.

**Robert Irvine LETHE, dba Athena Books,**
**Defendant.**

**Crim. No. S–884.**

United States District Court,
E. D. California.

April 29, 1970.

**422**

John P. Hyland, U. S. Atty., Sacramento, Cal., for plaintiff.

Anthony Glassman, Beverly Hills, Cal., Robert Vars, Vars, Reff & White, Sherman Oakes, Cal., for defendant.

### MEMORANDUM AND ORDER
MacBRIDE, Chief Judge.

Defendant has been indicted for violations of 18 U.S.C. § 1461 (Mailing Obscene Matter). The indictment is in ten counts. Six counts allege that defendant mailed advertisements for obscene matter which were "nonmailable". Four counts allege that defendant mailed obscene books or films which were "nonmailable." Defendant moves to dismiss the indictment on several grounds. He also moves to inspect the grand jury minutes.

■ The United States Attorney indicates that the grand jury proceedings were not transcribed. The only records of the grand jury's action in this case have been turned over to defendant. There is no impropriety in this, as the Court of Appeals for the Ninth Circuit has repeatedly held. *See* Jack v. United States, 409 F.2d 522 (9th Cir. 1969); Loux v. United States, 389 F.2d 911 (9th Cir. 1968), cert. denied, 393 U.S. 867, 89 S.Ct. 151, 21 L.Ed.2d 135. I do not find any merit in defendant's contention that because this case involves the First Amendment, the rule must be different. He has advanced no persuasive authority or reasoning for his contention. Defendant's contention that there must be a pre-indictment adversary hearing on the issue of obscenity is similarly without support and is rejected.

■ Defendant also argues that the material in question, including the advertisements, is constitutionally protected and that the court must view it prior to trial and determine if it is constitutionally protected. It is of course true that the question of obscenity is a constitutional one which must be passed upon by the court,[1] but it does not follow from this that the decision must be made prior to the trial.[2] Defendant's suggested procedure would require in effect two trials. The only purpose to be served would be to give defendant a preview of the government's case.

I have recently held that after the seizure of an obscene film pursuant to a warrant issued on probable cause, the issuing magistrate must, as soon as is practicable, view the film and determine whether or not it is constitutionally protected.[3] But the search and seizure situation is distinguishable from the present case. Whenever there is a forcible seizure there is a danger of governmental suppression of all copies before a judicial determination of the constitutional status of the material seized. This is especially true in the case of commercial films because the exhibitor will not generally have more than one print. However, where a defendant has voluntarily parted with literature or films, as in the instant case, he cannot complain of a suppression when he is later prosecuted.[4] I conclude that no judicial determination is required prior to trial.

I turn now to defendant's substantive attack on the indictment. He asserts

1. *See e. g.*, Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).

2. *Cf.* United States v. Fruehauf, 365 U.S. 146, 81 S.Ct. 547, 5 L.Ed.2d 476 (1961).

3. See Merritt v. Lewis, 309 F.Supp. 1249, 1254 (E.D.Cal. January 19, 1970 and January 28, 1970).

4. An obscenity prosecution may have a chilling effect on the further distribution of the material being prosecuted, but this is not sufficient reason to alter the normal procedures. I know of no authority which suggests otherwise.

that the government cannot constitutionally make it a crime to send obscene materials through the mails to an adult who requests them. His argument is based primarily upon Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), which held that "the First and Fourteenth Amendments prohibit making mere private possession of obscene material a crime." 394 U.S. at 568, 89 S.Ct. at 1249. The right to possess, he argues, implies the right to buy or receive, and the right to buy or receive is meaningless unless someone has the right to sell or send.

Before *Stanley*, the quick answer to defendant's argument would have been that Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304 (1957), held that obscenity was outside the protection of the First Amendment, and the government could regulate its possession and distribution at will, like any other contraband. However, *Stanley* clearly indicates that *Roth* does not go that far:

> *Roth* and its progeny certainly do mean that the First and Fourteenth Amendments recognize a valid governmental interest in dealing with the problem of obscenity. But the assertion of that interest cannot, in every context, be insulated from all constitutional protections. Neither *Roth* or any other decision of this Court reaches that far. (394 U.S. at 563, 89 S.Ct. at 1246, 1247)

The Court then proceeded to examine the constitutional implications and the governmental interests involved in the Georgia statute forbidding mere private possession of obscene material.

It is true that in *Stanley* the Court recognized the important governmental interest in regulating commercial distribution of obscene matter:

> "The door barring federal and state intrusion into [the area of First Amendment rights] cannot be left ajar; it must be kept tightly closed and opened only the slightest crack necessary to prevent encroachment upon more important interests." [citing Roth] *Roth* and the cases following it discerned such an "important interest" in the regulation of commercial distribution of obscene material. (394 U.S. at 563–564, 89 S.Ct. at 1247)

But to say that the government has an "important interest" in the regulation of commercial distribution is not to immunize all statutes touching commercial distribution from further judicial scrutiny.[5] In *Stanley* itself the State sought to justify its statute on the ground that it was a necessary incident to its statutory scheme prohibiting distribution. This did not prevent the Court from weighing the governmental interests against the protections of the Constitution.

Thus, while recognizing the government's legitimate interest in regulating distribution, I proceed to examine the constitutional implications of prohibiting use of the mails for distribution of obscene materials to one who has requested them.[6] I start with the proposition that the government may not legislate to control what books or films a person may possess in his house regardless of their content.

If the First Amendment means anything, it means that a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch. Our whole constitutional heritage rebels at the thought of giving government the

---

5. *See* Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967); Karalexis v. Byrne, 306 F.Supp. 1363 (D.Mass.1969) (three-judge court).

6. To the extent that defendant's argument depends on asserting the constitutional rights of those to whom he distributes, defendant has standing to do so. *See* Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

power to control men's minds. Stanley v. Georgia, 394 U.S. 557, 565, 89 S.Ct. 1243, 1248 (1969).

If the government has no substantial interest in preventing a citizen from reading books and watching films in the privacy of his home, then clearly it can have no greater interest in preventing or prohibiting him from acquiring them. The only possible purpose in preventing him from acquiring them is to prevent him from enjoying them.

It is now well established that the Constitution protects the right to receive information and ideas. "This freedom [of speech and press] * * * necessarily protects the right to receive * * *." [Citations] This right to receive information and ideas, regardless of their social worth, * * * is fundamental to our free society. Stanley v. Georgia, 394 U.S. 557, 564, 89 S.Ct. 1243 (1969).

The governmental interest is not augmented because a person *buys* the material instead of receiving it some other way.[7] Thus, I conclude that a person has a constitutional right to buy or receive obscene material.

■ The final step is not difficult. Can it be reasonably argued that although the government may not directly prevent someone from buying a book, it may achieve the same result indirectly by making it a crime to sell the book to him? I think not, unless the government can demonstrate it has some substantial interest in preventing the sale other than keeping the purchaser from buying.

■ There are basically only four goals which have been used to justify restrictions on dissemination of obscene material: (1) preventing crimes of sexual violence, (2) protecting the so-

ciety's moral fabric, (3) protecting children from exposure to obscenity, and (4) preventing "assaults" on the sensibilities of an unwilling public.[8] It is clear from *Stanley* that the Supreme Court does not consider either of the first two legitimate justifications for obscenity legislation:

[I]n the face of * * * traditional notions of individual liberty, Georgia asserts the right to protect the individual's mind from the effects of obscenity. We are not certain that this argument amounts to anything more than the assertion that the State has the right to control the moral content of a person's thoughts. To some, this may be a noble purpose, but it is wholly inconsistent with the philosophy of the First Amendment * * * "[The Constitution's] guarantee is not confined to the expression of ideas that are conventional or shared by a majority. * * * And in the realm of ideas it protects expression which is eloquent no less than that which is unconvincing." Cf. Joseph Burstyn, Inc. v. Wilson, 345 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 * * * (1952). Nor is it relevant that obscene materials in general, or the particular films before the Court, are arguably devoid of any ideological content. The line between the transmission of ideas and mere entertainment is much too elusive for a Court to draw, if indeed such a line can be drawn at all. * * * Whatever the power of the state to control public dissemination of ideas inimical to the public morality, it cannot constitutionally premise legislation on the desirability of controlling a person's private thoughts.

Perhaps recognizing this, Georgia asserts that exposure to obscene ma-

7. Commercial activity per se is no grounds for regulation. Ginzburg v. United States, 383 U.S. 463, 474, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966) ; New York Times Co. v. Sullivan, 376 U.S. 254, 265–266, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) ; Smith

v. California, 361 U.S. 147, 150, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959).

8. Note, The New Metaphysics of the Law of Obscenity, 57 California Law Review 1257, 1276 (1969).

terials may lead to deviant sexual behavior or crimes of sexual violence. There appears to be little empirical basis for that assertion. But more important, if the State is only concerned about printed or filmed materials inducing antisocial conduct, we believe that in the context of private consumption of ideas and information we should adhere to the view that "[a]mong free men, the deterrents ordinarily to be applied to prevent crime are education and punishment for violations of the law * * *." Whitney v. California, 274 U.S. 357, 378, 47 S.Ct. 641, 649, 71 L.Ed. 1095, * * * (1927) (Brandeis, J., concurring). * * * Given the present state of knowledge, the State may no more prohibit mere possession of obscene matter on the ground that it may lead to antisocial conduct than it may prohibit possession of chemistry books on the ground that they may lead to the manufacture of homemade spirits. [footnotes omitted] (394 U.S. at 565–567, 89 S.Ct. at 1248–1249)

*See also* Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414 (1967). The Supreme Court has recognized the protection of children [9] and the protection of an unwilling public from obtrusive invasions of privacy [10] as proper governmental interests justifying obscenity laws. But neither of these can be used to justify prohibiting mailings to a requesting adult. There is no public display, and children are not involved.[11] No valid governmental interest remains, and the conclusion is inescapable that the government cannot constitutionally bring such a prosecution.[12]

This case is strikingly similar to Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678 (1965). In *Griswold* the Court reversed the convictions of people who had given information, instruction and medical advice to married persons as to the means of preventing conception. The Court reasoned that the Constitution guarantees married couples the right to be free to choose whether or not to employ contraception. This includes the right to receive information and devices from a birth control clinic. The right to practice birth control would be meaningless if the State were permitted to prevent people from receiving information and devices. In *Stanley* the Court recognized the right of a person to choose what he will read and observe.[13] The distributor must similarly be allowed to provide what the person is entitled to see.

■ It remains to consider the argument that the government has plenary power to regulate the content of the mails. This doctrine originated in Ex parte Jackson, 96 U.S. 727, 24 L.Ed. 877 (1878), and Public Clearing House v. Coyne, 194 U.S. 497, 24 S.Ct. 789, 48 L.Ed. 1092 (1904), and has never been expressly overruled. Whatever its con-

9. *See* Stanley v. Georgia, 394 U.S. 557, 567, 89 S.Ct. 1243 (1969); Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968); Butler v. Michigan, 352 U.S. 380, 77 S.Ct. 524, 1 L.Ed. 2d 412 (1956).

10. *See* Stanley v. Georgia, *supra*, 394 U.S. at 567, 89 S.Ct. 1243; Redrup v. New York, 386 U.S. 767, 769, 87 S.Ct. 1414 (1967).

11. The argument that the government may restrict distribution to adults as necessary to insure protection of children is foreclosed by Butler v. Michigan, 352 U.S. 380, 77 S.Ct. 524 (1956).

12. *See* Note, The New Metaphysics of the Law of Obscenity, 57 California Law Review 1257, 1278–79 (1969). The commentators are apparently unanimous in concluding that *Stanley* cannot logically be restricted to its facts. *See* D. Engdahl, Requiem for Roth: Obscenity Doctrine is Changing, 68 Michigan Law Review 185, 229 (1969); 83 Harvard Law Review, 147 (1969); 21 Baylor Law Review 502, 511 (1969); 11 William and Mary Law Review 261 (1969).

13. 394 U.S. at 565, 89 S.Ct. 1243.

tinued vitality in other situations,[14] it is clear that it no longer applies in a First Amendment context.[15]

I am aware of the groundswell of support in the country for laws cracking down on smut peddlers. Numerous laws in this area are being considered in Congress. My decision today will certainly not comfort those who are concerned about this problem. But this decision is narrowly circumscribed. It will interfere only with those laws which seek to tell an adult what literature or films he may acquire for his own enjoyment. We may not always agree with the literary tastes of our fellow citizens, but we may not impose our tastes upon others by censorship or other means unless some greater interest of society is at stake. That is the price we pay for a free society. As I have attempted to show, there is no governmental interest other than "thought control" to sustain this attempted prosecution; therefore, four counts of this indictment must be dismissed.

The counts in the indictment involving the mailing of obscene matter to an adult requesting it are Three, Six, Eight and Ten. Defendant's motion to dismiss these counts is granted. The remaining counts involve unsolicited material. The rest of defendant's motions are denied.

It is so ordered.

14. "The hoary dogma of Ex parte Jackson * * * and Public Clearing House v. Coyne * * * that the use of the mails is a privilege on which the Government may impose such conditions as it chooses, has long since evaporated. [Citations]" Roth v. United States, 354 U.S. 476, 505, 77 S.Ct. 1304, 1319 (1957) (Justice Harlan dissenting).

15. *See* Lamont v. Postmaster General, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965) ; Hannegan v. Esquire, Inc., 327 U.S. 146, 66 S.Ct. 456, 90 L.Ed. 586 (1946) ; United States v. Van Leeuwen, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (March 23, 1970) : " '[T]he use of the mails is almost as much a part of free speech as the right to use our tongues.' " (397 U.S. at 251, 90 S.Ct. at 1032) [quoting Mr. Justice Holmes in Milwaukee Social Democratic Pub. Co. v. Burleson, 255 U.S. 407, 437, 41 S.Ct. 352, 65 L.Ed. 704 (1921) (dissenting opinion)].