**UNITED STATES of America,
Plaintiff,**

v.

**B & H DIST. CORP., Bark Book Dist.,
Inc., R. Ford, H. Wasserman and
Robert Barkow, Defendants.**

**No. 70–CR–67.**

United States District Court,
W. D. Wisconsin.

Nov. 24, 1970.

See also D.C., 319 F.Supp. 1237, 1240.

⊙─2

John O. Olson, U. S. Atty., Madison, Wis., for plaintiff.

James A. Walrath, Milwaukee, Wis., for defendants.

JAMES E. DOYLE, District Judge.

OPINION AND ORDER

Defendants have been indicted in three counts under 18 U.S.C. § 1462. The indictment charges that on three separate occasions defendants "did knowingly and unlawfully transport and cause to be transported in interstate commerce by means of a common carrier from New York, State of New York to Wausau, Marathon ·County in the Western District of Wisconsin, certain obscene, lewd, lascivious and filthy magazines." Defendants move to dismiss the indictment on the grounds that 18 U.S.C. § 1462 [1] is overbroad in that it imposes criminal sanctions upon the interstate transportation of obscene material in violation of the First and Ninth Amendments to the United States Constitution.

The obscenity of the materials is not in issue. It is assumed that the magazines are obscene.

Defendants attack the constitutionality of 18 U.S.C. § 1462 on its face. Since this statute clearly involves the area of First Amendment rights and freedoms, defendants are not limited to a construction of the statute as applied to the facts in this case. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); N. A. A. C. P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). Thus "in determining the validity of a statute in relation to the First Amendment, a court must determine what the statute can do. If the statute can violate freedom of speech and press, then it is invalid." United States v. Thirty-Seven (37) Photographs, 309 F.Supp. 36, 37 (C.D.Cal.1970) (three-judge court). See also Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965).

Since the United States Supreme Court held in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), that obscenity was not within the area of constitutionally protected speech or press, numerous First Amendment attacks on statutes similar to 18 U.S.C. § 1462 have been summarily dismissed. But the Supreme Court recently has retreated from its absolute position in *Roth* by holding in Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), that the First Amendment prohibits making private possession of obscene material a crime. Precisely what effect *Stanley* has on obscenity and First Amendment protection beyond private possession in a home is much debated.[2]

In *Stanley* the court specifically stated that "*Roth* and the cases following that decision are not impaired by today's holding," 394 U.S. at 568, 89 S.Ct. at 1249. Obviously, this cannot be taken to mean that obscenity in every context remains beyond the protection of the First Amendment. The court ruled otherwise. It declined to extend its holding beyond

---

1. Section 1462 provides in pertinent part:
   "Whoever brings into the United States, or any place subject to the jurisdiction thereof, or knowingly uses any express company or other common carrier, for carriage in interstate or foreign commerce—
   (a) any obscene, lewd,. lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character * * *.

   "Shall be fined not more than $5,000 or imprisoned not more than five years, or both, for the first such offense, and shall be fined not more than $10,000 or imprisoned not. more than ten years, or both, for each such offense thereafter."

2. The implications of Stanley v. Georgia have been discussed in several articles: e. g., Note, The New Metaphysics of Law and Obscenity, 57 Calif.L.Rev. 1257 (1969); Gegan, The Twilight of Non-speech, 15 Cath.Law. 210 (1969); D. Engdahl, Requiem for Roth: Obscenity Doctrine is Changing, 68 Mich.L.Rev. 185 (1969); 83 Harv.L.Rev. 147 (1969).

possession of obscene matter in the privacy of one's home. But *Stanley's* broader implication are inescapable.

A number of recent decisions applying *Stanley* have read it to distinguish between private uses or actions which are protected by the First Amendment and public (or commercial) uses or actions which are not. United States v. Lathe, 312 F.Supp. 421 (E.D.Cal.1970); Karalexis v. Byrne, 306 F.Supp. 1363 (D. Mass.1969) (three-judge court), prob. juris. note, 397 U.S. 985, 90 S.Ct. 1123, 25 L.Ed.2d 394, restored to calendar for reargument, 399 U.S. 922, 90 S.Ct. 2235, 26 L.Ed.2d 789 (1970); United States v. Articles of "Obscene" Merchandise, 315 F.Supp. 191 (S.D.N.Y.1970) (three-judge court); Stein v. Batchelor, 300 F. Supp. 602 (N.D.Tex.1969) (three-judge court), prob. juris. noted, 394 U.S. 954, 90 S.Ct. 428, 24 L.Ed.2d 419 (1969); United States v. Orito, No. 70–CR–20 (E.D.Wis., Oct. 28, 1970); United States v. Dellapia, 433 F.2d 1252 (2d Cir., Oct. 20, 1970). In *Stanley* the court acknowledged this distinction when it spoke of *Roth*: "But that case dealt with *public* distribution of obscene materials and such distribution is subject to different objections," 394 U.S. at 567, 89 S.Ct. at 1249 (emphasis added). This interpretation of *Stanley* appears in Stein v. Batchelor, 300 F.Supp. 602 (N.D.Tex. 1969) at 606:

> "Although the narrow holding of *Stanley* is simply that 'the First and Fourteenth Amendments prohibit making mere private possession of obscene material a crime', we think that the case also stands for a broader proposition. Since *Stanley* involved a direct review of a state conviction for possession of obscene matter, the narrow holding was sufficient to reverse the conviction; thus it was not necessary for the Court to base its decision on a broader ground. It is impossible, however, for this Court to ignore the broader implications of the opinion which appears to reject or significantly modify the proposition stated in Roth v. United States, 354 U.S. 476,

485, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) that 'obscenity is not within the area of constitutionally protected speech or press'. * * *

> "*Stanley* expressly holds that obscenity is protected in the context of mere private possession and in our opinion further suggests that obscenity is deprived of this protection only in the context of 'public actions taken or intended to be taken with respect to obscene matter'."

This distinction is rooted in governmental goals or interests thought to be valid. In United States v. Lethe, 312 F. Supp. 421 (E.D.Cal.1970), the court succinctly set forth the possible governmental goals (at 424):

> "There are basically only four goals which have been used to justify restrictions on dissemination of obscene material: (1) preventing crimes of sexual violence, (2) protecting the society's moral fabric, (3) protecting children from exposure to obscenity, and (4) preventing 'assaults' on the sensibilities of an unwilling public."

The *Lethe* court then observed, and I agree, that in *Stanley* the Supreme Court rejected goals (1) and (2) as adequate justifications for anti-obscenity legislation. With respect to goal (2), the Supreme Court said:

> " * * * Georgia asserts the right to protect the individual's mind from the effects of obscenity. We are not certain that this argument amounts to anything more than the assertion that the State has the right to control the moral content of a person's thoughts. To some, this may be a noble purpose, but it is wholly inconsistent with the philosophy of the First Amendment. * * * Nor is it relevant that obscene materials in general, or the particular films before the Court, are arguably devoid of any ideological content. The line between the transmission of ideas and mere entertainment is much too elusive for this Court to draw, if indeed such a line can be drawn at all. * * * Whatever the power of the state to control public dissemination

of ideas inimical to the public morality, it cannot constitutionally premise legislation on the desirability of controlling a person's private thoughts." 394 U.S. at 565–566, 89 S.Ct. at 1248. I note the words "public dissemination of ideas inimical to the public morality," and I will comment later herein on the definition of "public" which *Stanley* appears to require. With respect to goal (1), as stated in the *Lethe* opinion, the Supreme Court said in *Stanley*:

"Perhaps recognizing this, Georgia asserts that exposure to obscene materials may lead to deviant sexual behavior or crimes of sexual violence. There appears to be little empirical basis for that assertion. But more important, if the State is only concerned about printed or filmed materials inducing anti-social conduct, we believe that in the context of private consumption of ideas and information we should adhere to the view that '[a]mong free men, the deterrents ordinarily to be applied to prevent crime are education and punishment for violations of the law * * *.' Whitney v. California, 274 U.S. 357, 378, 47 S.Ct. 641, 649, 71 L.Ed. 1095 (1927) (Brandeis, J., concurring). * * * Given the present state of knowledge, the State may no more prohibit mere possession of obscene matter on the ground that it may lead to antisocial conduct than it may prohibit possession of chemistry books on the ground that they may lead to the manufacture of homemade spirits." 394 U.S. at 566–567, 89 S.Ct. at 1248–1249.

Again, I note the phrase "the context of private consumption of ideas and information," and I will comment in a moment upon the definition of "private" which *Stanley* appears to require.

■ The remaining two goals or interests catalogued in *Lethe* are: protecting children from exposure to obscenity, and preventing assaults on the sensibilities of an unwilling adult public. These two goals or interests have been recognized as justification for governmental prohibitions against obscenity, Ginsberg

v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 145 (1968); Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967); Butler v. Michigan, 352 U.S. 380, 77 S.Ct. 524, 1 L.Ed.2d 412 (1956), but only these two goals or interests appear to have survived *Stanley*. Uses or conduct which are in conflict with these two goals or interests, it appears, do not enjoy the protection of the First Amendment and may be prohibited and punished by government. But uses or conduct which are not in conflict with these two goals or interests enjoy the protection of the First Amendment and may not be prohibited or punished. Stanley v. Georgia, *supra*; United States v. Lethe, 312 F.Supp. 421 (E.D.Cal.1970); Stein v. Batchelor, 300 F.Supp. 602 (N.D.Tex. 1969); Karalexis v. Byrne, 306 F.Supp. 1363 (D.Mass.1969); United States v. Orito, No. 70–CR–20 (E.D.Wis., Oct. 28, 1970).

■ I believe that the continued use of the terms "public" and "private" is confusing because the test of constitutionality to be applied since *Stanley* must be the test of whether the proscribed uses or conduct are in conflict with either of the two permissible governmental goals. If the terms must be employed, then "public" uses or conduct must be defined as those which are in conflict with the goal or interest of protecting children from exposure to obscenity or with the goal or interest of preventing assaults on the sensibilities of an unwilling adult public; "private" uses or conduct must be defined as those which are not so in conflict.

Section 1462 does not discriminate in any way between those uses or conduct which are in conflict with the two permissible governmental goals or interests and those uses or conduct which are not so in conflict. This failure to discriminate, in itself, may render the statute fatally overbroad. But because in *Stanley* the specific use of obscene materials held to be within the protection·of the First Amendment was possession in a home, it may be necessary to determine whether the validity of governmental regulation of transportation of obscene materials, as well as the validity of gov-

ernmental regulation of possession in a home, depends upon whether the attempted regulation is limited to one or both of the two constitutionally permissible goals or interests.

The government contends that *Stanley* recognizes no constitutional right to receive obscene materials, but rather only a right to be free from intrusive inquiry by the state into those materials which an individual may read or use in his home.[3] This argument is not persuasive:

> "If the government has no substantial interest in preventing a citizen from reading books and watching films in the privacy of his home, then clearly it can have no greater interest in preventing or prohibiting him from acquiring them. The only possible purpose in preventing him from acquiring them is to prevent him from enjoying them." United States v. Lethe, *supra,* 312 F.Supp. at 424.

In *Stanley* the Court acknowledged the right to receive information and ideas regardless of their social value, 394 U.S. at 564, 89 S.Ct. at 1247:

> "It is now well established that the Constitution protects the right to receive information and ideas. 'This freedom [of speech and press] * * necessarily protects the right to receive. * * * ' Martin v. City of Struthers, [Ohio,] 319 U.S. 141, 143, 63 S.Ct. 862, 863, 87 L.Ed. 1313 (1943); see Griswold v. Connecticut, 381 U.S. 479, 482, 85 S.Ct. 1678, 1680, 14 L.Ed.2d 510 (1965); Lamont v. Postmaster General, 381 U.S. 301, 307–308, 85 S.Ct. 1493, 1496–1497, 14 L.Ed. 2d 398 (1965) (Brennan, J., concurring); cf. Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). This right to receive in-

formation and ideas, regardless of their social worth, see Winters v. New York, 333 U.S. 507, 510, 68 S.Ct. 665, 667, 92 L.Ed. 840 (1948), is fundamental to our free society."

A number of obscenity statutes have been found unconstitutional on the basis that they violate the individual's right to receive obscene matter for uses which neither expose children to obscenity nor assault the sensibilities of an unwilling adult public. United States v. Lethe, *supra* (18 U.S.C. § 1461 (Mailing Obscene Matter)); United States v. Thirty-Seven (37) Photographs, 309 F.Supp. 36 (C.D.Cal.1970) (19 U.S.C. § 1305 (Immoral Articles; Prohibition of Importation)); United States v. Articles of "Obscene" Merchandise, 315 F.Supp. 191 (S.D.N.Y.1970) (19 U.S.C. § 1305).

Recognizing that the First Amendment protects the individual's right to receive obscene materials for such uses, I believe that the dissemination of obscene matter through interstate transportation, in a manner which itself neither exposes children to obscenity nor assaults the sensibility of an unwilling adult public, cannot be less protected. The government cannot indirectly prevent an individual from receiving obscene matter for permissible uses by making it a crime to disseminate or transport the materials to him. United States v. Lethe, *supra;* Karalexis v. Byrne, 306 F.Supp. 1363 (D.Mass.1969). By analogizing to Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed. 2d 510 (1965), the court reached this same conclusion in United States v. Orito, *supra* (slip opinion, p. 5):

> "In *Griswold* * * *, the court noted that since married couples have the right to use contraceptive devices, such

**3.** The government also contends that *Stanley*, does not mean that obscenity is protected by the First Amendment, but rather that the values which the Fourth Amendment and other provisions of the Bill of Rights seek to protect would be endangered by the government searches, seizures, and punishment necessary to enforce the Georgia statute. I agree that other constitutional issues are raised when the state seeks to prohibit possession in a home. In *Stanley* the court was aware of these issues. But it grounded its decision solely on First Amendment rights (at 565, 89 S.Ct. at 1248):

> "If the First Amendment means anything, it means that a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch."

right would be meaningless if a state could lawfully block such persons from receiving contraceptive devices and instruction. By analogy, it follows that with the right to read obscene matters comes the right to transport or to receive such material when done in a fashion that does not pander it or impose it upon unwilling adults or upon minors."

The government relies heavily upon three decisions.

In United States v. Melvin, 419 F.2d 136 (4th Cir. 1969), the court refused to extend *Stanley* beyond possession of obscene material in a home. I think the court did not appreciate the full implications of *Stanley,* and I cannot accept its narrow interpretation.

In United States v. Fragus, 5 Cir., 428 F.2d 1211, in an opinion entered June 23, 1970, supplementing its earlier opinion, 422 F.2d 1244 (5th Cir. 1970), the court declined to extend *Stanley* to interstate transportation. The court relied mainly on Gable v. Jenkins, 309 F.Supp. 998 (N.D.Ga.1969) (three-judge court), aff'd 397 U.S. 592, 90 S.Ct. 1351, 25 L.Ed.2d 595 (1970).

In Gable v. Jenkins the plaintiff challenged as overbroad a Georgia statute which prohibited distribution of obscene materials. The plaintiff was engaged in the business of distributing books and magazines. He objected to a portion of the statute [4] which prohibited dissemination of obscene material "to any person." The court found that the words of the *Stanley* opinion "indicate a conscious desire on the part of the Court to keep *Stanley* limited to its facts and no statements in the body of the opinion could logically be construed to encompass the contention of plaintiff." 309 F.Supp. at 1000. It continued:

"Plaintiff divines several situations under which the working of [the Geor-

gia statute] might be overly broad, viz., a husband showing an obscene book to his wife, or consenting adults being prohibited from gathering in a private home to view an obscene film."

The *Gable* court found that these "private" uses were not present in the case before it, and considered itself free, therefore, to ignore such possible applications of the statute.

Because the Georgia statute obviously dealt with expression in written form, I believe that the *Gable* court was not free to disregard these possible applications to private uses. But it did clearly disregard them, and must be read as sustaining a prohibition only against dissemination of obscene materials in a manner, or for the purpose of facilitating uses or conduct, which exposes children to obscenity or assaults the sensibilities of unwilling adults. Moreover, it does not appear that the contention was presented to the court, and in any event the court makes no reference to the point, that the right to read an obscene book in one's home is dependent upon one's right to buy it at a bookstore and the book dealer's right to sell it to the prospective home-reader. That the judgment of dismissal in *Gable* was affirmed in an inscrutable four-word decision, 397 U.S. 592, 90 S.Ct. 1351, 25 L.Ed.2d 595, is troublesome. It is difficult to suppose that the Supreme Court chose so obscurely to deal with the application of the statute to "private" uses, when the lower court had declined to consider such application. Accordingly, I consider that the action of the Supreme Court in *Gable* does not foreclose a fresh inquiry in the present case into the possible application of 18 U.S.C. § 1462 to uses which neither expose children to obscenity nor assault the sensibilities of unwilling adults.[5]

Section 1462 fails to distinguish between transportation which presents danger to minors or the danger of ob-

<hr>

4. Ga.L.1968, p. 1249, 26 Ga.Code 2101 (a).

5. In this opinion I have considered that the expressions "exposing children to ob-

scenity" and "assaulting the sensibilities of unwilling adults" are broad enough to include the term "pandering," which frequently appears in court decisions and other literature on the subject.

trusion upon unwilling adults and transportation which does not present these dangers. Accordingly, I find it unconstitutionally overbroad, in violation of the First and Ninth Amendments.

Therefore, for the reasons stated above, and upon the basis of the entire record herein, it is ordered that the defendants' motion to dismiss the indictment is hereby granted.