**UNITED STATES of America**

v.

**Herbert L. GUNDLACH, d/b/a Superb Sales and H. & G. Enterprises, d/b/a Adult World Products Co.**

**Crim. No. 14808.**

United States District Court,
M. D. Pennsylvania.

May 3, 1972.

James S. Walker, U. S. Atty., Scranton, Pa., Donald B. Nicholson, U. S. Dept. of Justice, Washington, D. C., for the United States.

Robert Eugene Smith, Towson, Md., D. Freeman Hutton, Atlanta, Ga., J. Thomas Menaker, Harrisburg, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

HERMAN, District Judge.

Defendant Herbert L. Gundlach seeks dismissal of all 32 counts of an indictment charging him with illegal use of the mails to send obscene material, in direct violation of 18 U.S.C. § 1461.[1]

---

1. 18 U.S.C. § 1461 says, in pertinent part:
"Every obscene, lewd, lascivious, indecent, filthy or vile article, matter, thing, device, or substance; and

\*　　\*　　\*　　\*　　\*

"Every written or printed card, letter, circular, book, pamphlet, advertisement, or notice of any kind giving information, directly, or indirectly, where, or how, or from whom, or by what means any of such mentioned matters, articles, or things may be obtained or made, or where or by whom any act or operation of any kind for the procuring or producing of abortion will be done or performed, or how or by what means conception may be prevented or abortion produced whether sealed or unsealed,

\*　　\*　　\*　　\*　　\*

"Is declared to be nonmailable matter and shall not be conveyed in the mails or delivered from any post office or by any letter carrier.

"Whoever knowingly uses the mails for the mailing, carriage in the mails, or delivery of anything declared by this section to be nonmailable, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, or knowingly takes any such thing from the mails for the purpose of circulating or disposing thereof, or of aiding in the circulation or disposition thereof, shall be fined not more than $5,000 or imprisoned not more than five years, or both, for the first such offense, and shall be fined not more than $10,000 or imprisoned not more than ten years, or both, for each such offense thereafter."

Essentially the motion to dismiss is built around three contentions: (1) that 18 U.S.C. § 1461 is unconstitutional; (2) that no pre-arrest hearing was held to determine the issue of obscenity *vel non*; and (3) that the articles in question are not obscene as a matter of law.

Each count involves a separate mailing of particular articles to individuals in numerous locations around the country. Most of the counts involve the mailing of illustrated advertisements telling how, where and by what means certain publications and/or photographs might be obtained. A detailed examination of the material follows in the discussion of defendant's third ground for dismissal.

### I. *Constitutionality of 18 U.S.C. § 1461*

■ Defendant alleges 18 U.S.C. § 1461 to be unconstitutionally violative of the First, Fourth, Fifth and Sixth Amendments. Relying on Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), defendant contends he has an implied right to use the mails for transmission of potentially obscene material. Stanley clearly recognized an individual's constitutional right to own, possess and read obscene material in the privacy of one's home. The Stanley decision, according to defendant, carries the clearly implied correlative right to acquire and transport such material.

Subsequent to receipt of defendant's motion to dismiss the Supreme Court upheld the constitutionality of 18 U.S.C. § 1461 in United States v. Reidel, 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed.2d 813 (1971). Ironically, the defendant had relied on the lower court's ruling in United States v. Reidel, C.D.Cal., Criminal No. 8458–HP. There the district court concluded that absent an unsolicited mailing to minors, 18 U.S.C. § 1461 was invalid. The Supreme Court reversed, expressly upholding the constitutionality of the statute even as it relates to a solicited mailing to adults.

Prior to Reidel the Supreme Court had rejected an attack on the constitutionality of 18 U.S.C. § 1461. Roth v. United States, 354 U.S. 476, 493, 77 S. Ct. 1304, 1 L.Ed.2d 1498 (1957). In Roth the Court affirmed the statute's constitutionality, but without explanation. Reidel was an apparent attempt to clarify the constitutionality of § 1461 as it relates to consenting adults. For the purposes of the appeal, the Court in Reidel assumed, *arguendo*, that the material was obscene. Likewise, the Court accepted the premise that the recipients were adults who had solicited the material (402 U.S. at 353, 91 S.Ct. 1410).

Since Roth the Supreme Court has expressly found obscenity to be outside the scope of first amendment protection. The Court in Roth concluded that "obscenity is not within the area of constitutionally protected speech or press" (354 U.S. at 485, 77 S.Ct. at 1309), cited with approval in Reidel (402 U.S. at 354, 91 S.Ct. 1410). With obscenity unprotected by the first amendment, the Court's ruling in Reidel clearly goes to the essence of defendant's attack on the statute itself.

Similarly, defendant inappropriately relies on United States v. Thirty-Seven (37) Photographs, 309 F.Supp. 36 (C.D. Cal.1970). The Supreme Court, on the same day as the Reidel ruling, expressly reversed the lower court, United States v. Thirty-Seven (37) Photographs, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971). The applicability of Thirty-Seven (37) Photographs as cited by defendant has therefore been rendered moot. A further discussion of defendant's contention is unnecessary. This court, therefore, rejects defendant's attack on the constitutionality of 18 U.S.C. § 1461.

Defendant alleges two further grounds for dismissal of the indictment: (II) that no adversary hearing was held prior to arrest on the issue of obscenity *vel non*; and (III) that the material allegedly distributed in violation of § 1461 is not obscene as a matter of law. The

matter of a pre-arrest obscenity hearing is a complex and unsettled one and a consideration of its merits should precede any determination of the obscenity of the material here in question.

## II. *Pre-Arrest Obscenity Hearing*

■ The defendant sets before this court countless cases in support of its proposition that a pre-arrest hearing must be held on the issue of obscenity *vel non*. Although few of defendant's cases are tied to § 1461, defendant contends their logic compelling by analogy. Many of the cases can be readily distinguished because they involve forcible seizure of the material from the defendant's place of business. For example, defendant cited Delta Book Distributors, Inc. v. Cronvich, 304 F.Supp. 662 (E.D. La.1969). There the books in question were seized under a state statute from defendant's newsstand and the stand itself was closed.

The facts here are readily distinguishable—especially in that the defendant's allegedly obscene material was not seized but rather secured by the postal authorities after defendant had voluntarily parted with it. In United States v. Lethe, 312 F.Supp. 421, 423 (E.D.Cal. 1970), the court expressly faced the seizure question in 18 U.S.C. § 1461. In the same opinion, however, the court ruled § 1461 to be unconstitutional where it involved consenting adults. That ruling has obviously been rendered meaningless by Reidel. Nevertheless, this court finds the logic of the Lethe court persuasive as it regards pre-arrest hearings:

"Defendant's suggested procedure would require in effect two trials. The only purpose to be served would be to give defendant a preview of the government's case * * * * Whenever there is a forcible seizure there is a danger of governmental suppression of all copies before a judicial determination of the constitutional status of the material seized * * * * However, where a defendant has voluntarily parted with literature or films, as in the instant case, he cannot complain of suppression when he is later prosecuted." United States v. Lethe, 312 F.Supp. 421, 423 (1970). *See also* United States v. Levy, 331 F. Supp. 712, 713 (D.Conn.1971).

Even more persuasive is Bazzell v. Gibbens, 306 F.Supp. 1057 (E.D.La. 1969). That case involved a *seizure* of a single copy of a film from a store under color of a state statute. The Bazzell court, the same court that handed down the Delta Book ruling, rejected the pre-arrest hearing argument. That court, sitting with a different judge, noted Delta Book, but concluded:

"But where, as here, a single copy of a film is seized for the sole purpose of preserving it as evidence to be used in a criminal action to be brought pursuant to a State statute already held, in all respects pertinent hereto, to be constitutional on its face . . . such a seizure cannot be said to be violative of the First Amendment's guarantees albeit a side effect of such a seizure coincidentally prevents that one particular copy of the film from being further disseminated pending the outcome of the criminal proceedings (Citing cases)." Bazzell v. Gibbens, 306 F.Supp. 1057, 1059 (E.D.La.1969); *accord* Miller v. United States, 431 F. 2d 655 (9th Cir.1970); United States v. Wild, 422 F.2d 34, 38 (2d Cir.1969).

Likewise, by implication, the Supreme Court has indicated an unwillingness to make a pre-arrest obscenity hearing an absolute requirement. In A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1965), a book peddler's entire stock of 1,715 books under 31 titles was confiscated under a state statute without a prior hearing on obscenity *vel non*. The Court declared the confiscation prior to a hearing to be unconstitutional. Nowhere did the Supreme Court declare there to be an absolute constitutional right to a pre-arrest obscenity hearing. Instead, the Court repeatedly referred to the confiscation of *all* the books in question. Given the facts in A Quantity of

Books and the Court's failure to declare the hearing to be an absolute first amendment right, this court aligns itself with Miller v. United States, *supra,* and United States v. Wild, *supra,* rehearing denied, 422 F.2d at 38.

Owing to the lack of a Third Circuit ruling on the problem this court chooses to adhere to the logic of the Second Circuit's ruling in Wild:

> "We do not believe . . . Quantity of Books can be read to proscribe the application of the ordinary methods of initiating criminal prosecution to obscenity cases." (422 F.2d, at 38)

In Wild, as here, the defendants were charged with a violation of 18 U.S.C. § 1461. There, however, the materials in question were seized with a search warrant on a selective basis for the sole purpose of acquiring evidence. The confiscated slides and literature were part of unsent mailings advertising other available slides.

A three-judge court, in Milky Way Productions, Inc. v. Leary, 305 F.Supp. 288 (S.D.N.Y.1969), rejected the pre-arrest hearing argument, aff'd per curiam by the Supreme Court, New York Feed Co. v. Leary, 397 U.S. 98, 90 S.Ct. 817, 25 L.Ed.2d 78 (1970). The three-judge court termed the pre-arrest hearing to be "antithetical" to all the Supreme Court rulings on the first amendment. Plaintiff book publishers sought an injunction against the local police commissioner to ban further arrests until an adversary hearing had first been held on the issue of obscenity *vel non.* Such injunctive relief perhaps carries a greater burden than does the dismissal sought in the case at bar. Nevertheless, Judge Frankel's decision warrants repetition in part:

> "A 'prior restraint' is also effected, plaintiffs say, when arrests are made —particularly multiple arrests for promoting the same publication—because this inhibits others from continuing to distribute the materials. And so, the argument concludes, there must be an adversary hearing and judicial determination preceding the inception of the criminal process.

> \*  \*  \*  \*  \*  \*

> "It is inappropriate, we think, to 'weigh' (assuming we could) the relative impact of familiar criminal procedures against the innovation plaintiffs seek. It seems sufficient for our purposes that the supposed virtues of the departure they urge are not at all apparent and are directly antithetical to all pertinent indications in the Supreme Court's pronouncements implementing the First Amendment. The net effect of those expressions suggests that traditional criminal prosecutions, with their procedural safeguards, are surely permissible, and very possibly preferred, vehicles for enforcing bans against obscenity. See Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 69–70, 83 S.Ct. 631, 9 L.Ed.2d 584 . . . (1963) . . . Bantam Books . . . upon which plaintiffs rely, reminds us specifically that procedures short of prosecution, intended as potential substitutes, may be less acceptable than the standard proceeding that begins with complaint, information or indictment as the first, non-adversary determination.

> "At any rate, we find no warrant in the First Amendment or the cases that give it full meaning for compelling the radical change plaintiffs seek in state (and, presumably, federal) criminal procedures affecting obscenity cases." (305 F.Supp., at 296–297)

This court, therefore, rejects defendant's motion for dismissal of all the charges based on a failure to grant a pre-arrest hearing on obscenity *vel non.*

### III. *Obscenity of the Material in Question*

■ Defendant contends that all 32 counts of the indictment should be dismissed because the material in question is not, as a matter of law, obscene.

Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964) requires this court to make an independent deter-

mination as to the obscenity of the material (at 187–189, 84 S.Ct. 1676). That material which this court finds not to be obscene as a matter of law must logically be eliminated from the indictment. The legal standards of obscenity facing this court grow mainly out of Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966); Ginzburg v. United States, 383 U.S. 463, 86 S. Ct. 942, 16 L.Ed.2d 31 (1966); and A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Massachusetts, 383 U.S. 413, 86 S. Ct. 975, 16 L.Ed.2d 1 (1966).

Two rulings provide a compelling impetus for this court to readily dispose of several of the counts: United States v. Central Magazine Sales, Ltd., 373 F.2d 633 (4th Cir. 1967), and its per curiam reversal by the Supreme Court, 389 U.S. 50, 88 S.Ct. 235, 19 L.Ed.2d 49 (1967). In that case the Fourth Circuit ruled that numerous confiscated photos were obscene as a matter of law. The circuit's detailed description of the photos of the women [2] are almost identical with the photos in question in several of the counts of the instant case. In the per curiam reversal Mr. Justice Harlan and Mr. Chief Justice Warren cited Roth as controlling in such an instance. The Court's interpretation of Roth in Central Magazine Sales, Ltd. logically controls this court's decision regarding those counts based solely on explicit photographs of nude women.

■ Although there are contra cases later than Central Magazine [3] they must be considered aberrations. Without confronting the question of the method of advertising, Counts VI, VIII, XI, XIV, XV, XVI and XXIII are hereby dismissed. Some of these counts also involve the mailing of an advertisement with the magazine or photos in question. However, the ads are separate solicitations for future purchases, unrelated to the magazines. Counts XIV and XVI include three films, all of nude women alone. The character of the films does not vary greatly from the nature of the explicit photos in the magazines. Motion pictures are within the ambit of constitutional guarantees of freedom of speech and press, Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952), unless declared obscene, Roth v. United States, *supra.* Applying the Central Magazine definition that nude women, no matter how explicit and unartistic their display, are not obscene, this court concludes the films likewise are not obscene.

Counts I through V, VII, IX, X, XII, XIII, XVII, XVIII, and XXIV through XXXII all involve advertisements. Generally, the ads explain how to obtain a particular book, magazine or motion picture. The advertisements themselves are all illustrated in varying degrees with sample photographs and drawings. However, the question of the obscenity of the *content* of the mailed advertisements is not crucial.

■ The Supreme Court in Ginzburg expressly declared the context of the publication to be relevant in determining its obscenity. Mr. Justice Brennan's majority opinion declared that "[T]he

2. *"Exclusive* is a collection of photographs of young women. In most of them, long stockings and garter belts are employed to frame the pubic area and to focus attention upon it. A suggestion of masochism is sought by the use in many of the pictures of chains binding the model's wrists and ankles. Some of the seated models, squarely facing the camera, have their knees and legs widespread in order to reveal the genital area in its entirety. In one of the pictures, all of these things are combined: The model, clad only in a framing black garter belt and black stock-ings is chained to a chair upon which she is seated, facing the camera, with one knee elevated and both spread wide" (373 F.2d at 634).

3. Miller v. United States, 431 F.2d 655 (9th Cir. 1970). In that case, the photos of nude women were likewise identical to those in the instant case and in Central Sales. It should be noted, however, that Miller also looked to the "pandering" test of Ginzburg v. United States, *supra.* *See also* United States v. 77 Cartons of Magazines, 300 F.Supp. 851 (N.D.Cal.1969).

question of obscenity may include consideration of the setting in which the publications were presented as an aid to determining the question of obscenity" (383 U.S. 465–466, 86 S.Ct. at 944). The Court also concluded:

"[W]e view the publications against a background of commercial exploitation of erotica solely for the sake of their prurient appeal. . . ." (at 466, 86 S.Ct. at 945)

"Where the purveyor's sole emphasis is on the sexually provocative aspects of his publications, that fact may be *decisive* in the determination of obscenity." (at 470, 86 S.Ct. at 947) (Emphasis supplied)

■ Particularly crucial in this instance is the very text of the ads. The Court noted in Ginzburg[4] that the ad itself need not be obscene to be violative of 18 U.S.C. § 1461. Instead, a count based solely on an advertisement derived its illegality from the item advertised. Nowhere does § 1461 require the advertisement itself to be obscene. A count based solely on an advertisement can support a conviction under § 1461 so long as the publication advertised is obscene. Therefore, this court must dismiss Counts I through V, VII, IX, X, XII, XIII, and Counts XXIV through XXXI. Each of these counts involves an advertisement exclusively for material in Counts VI, VIII, XI, XIV, XV, XVI and XXIII; already found not to be obscene as a matter of law.

The court must now face the more complex problems posed by Counts XIX through XXI and their related advertising in Counts XVII, XVIII, XXII and XXXII. For the reasons cited below, Counts XIX through XXI are retained in the indictment, Counts XVII, XVIII, XXII and XXXII are also retained since they directly advertise Counts XIX through XXI.

■ Count XIX alleges the wrongful mailing of playing cards. The box is illustrated by four partial photographs of a man and woman engaged in sexual intercourse. The front face of the container says only: "Sexual Love, 55 illustrations in vivid color." Inside, one of the cards describes the photos as a "manual". Each card is an explicit color photograph of a position of sexual intercourse, the back being a description of what is occurring in the photo. The cards themselves handily double as playing cards. The rather bizarre juxtaposition of playing cards and a "sex manual" goes unexplained. Additionally, there is a preface (also on a card signed by one Charles Rosenbloom, M.D., praising the "book" as "concise and helpful".)

Counts XVIII and XXII are advertisements for the playing cards. (They also serve as ads for Counts XX and XXI) The relevant portion of the ad shows numerous sample photos with the following text:

"Real, authentic playing cards—except this deck is *really* stacked! 54 swinging couples show you everything they've got—in glossy full color. Nothing is censored. Nothing is hidden. Get these cards—and you'll find your buddies lining up to play with you. Only problem is, how will you keep your mind on the game?" (Emphasis in original)

Clearly, any attempt at making the cards appear to contain meaningful, helpful material is destroyed by the very nature of the advertising. Ginzburg, *supra*, makes it obvious that advertising aimed solely at the "sexually provocative aspects" of the item may be "decisive in the determination of obscenity" (383 U. S., at 470, 86 S.Ct. at 947). The entire slant of the advertising as well as the method of displaying the "sex manual" fall within the prurient interest test of Roth v. United States, 354 U.S. 476, 487

---

4. The Supreme Court noted that the ads themselves were not obscene: "The Government stipulated at trial that the circulars advertising the publications were not themselves obscene; therefore the conviction on the counts for mailing the advertising stand only if the mailing of the publications offended the statute" (n. 4, at 465, 86 S.Ct. at 944). (Emphasis supplied)

n.5, 77 S.Ct. 1304, 1310 [5] and the "pandering" test of Ginzburg. Given the nature of the advertising and the dubious social value of the playing cards, this court declines to rule, as a matter of law, that the material in Count XIX is not obscene. The correlative Counts XVIII and XXII which advertise XIX must also remain.

■ Count XX is a 240-page book entitled, "The Amorous Drawings of the Marquis Franz Von Bayros." There is a brief preface and limited text. Largely, the book consists of highly detailed and graphically real drawings. Most of the drawings depict lesbianism, masturbation, sodomy and bestiality. Few depict ordinary male-female sexual conduct.

Despite the publisher's attempt to render the drawings of "historical" importance as a "collector's item," the book would seem to be obvious obscenity. A typical drawing (found both in the book and in the advertisements) shows a deer performing cunnilingus on an adolescent girl. This court is at a loss to find any "redeeming social importance" in such a publication. Nothing in Roth, Ginzburg, or even Memoirs, indicates a contra conclusion. Count XX is therefore retained in the indictment. Counts XVII, XVIII and XXXII are retained as advertisements of Count XX.

■ Count XXI requires little explanation except to reveal its title: "Animals as Sex Partners." The illustrated book claims to be a series of authentic case histories of bestiality amongst women. The text consists of detailed summaries of several encounters between young girls and countless animals. The advertisements in Counts XVII, XVIII, XXII and XXXII each offer to sell the book in Count XXI. The ad is titled, "Sex Slammers," and says:

"This is the incredible, documented book that tells you and *shows* you *how* they do it, and *why*! Fully revealed is the unbridled, blistering sexual urges that drive these females to bestiality. The illustrations are as stunning as the case histories are shocking!" (Emphasis in original)

For the reasons already stated in regards to Count XIX, Count XXI is retained as are the related advertising counts.

Therefore, defendant's motion to dismiss is granted as to Counts I through XVI, and XXIII through XXXI. The motion to dismiss is denied as to Counts XVII through XXII, and Count XXXII.

5. The Supreme Court has outlined prurient interest as follows: "*I. e.*, material having a tendency to excite lustful thoughts. Webster's New International Dictionary (Unabridged, 2d ed., 1949) defines *prurient*, in pertinent part, as follows:

" '. . . Itching; longing; uneasy with desire or longing; of persons, having itching, morbid, or lascivious longings; of desire, curiosity, or propensity, lewd. . . .'

"*Pruriency* is defined, in pertinent part, as follows:

" '. . . Quality of being prurient; lascivious desire or thought. . . .'

"See also Mutual Film Corp. v. Industrial Comm'n, 236 U.S. 230, 242 [35 S.Ct. 387, 59 L.Ed. 552], where this Court said as to motion pictures: '. . . They take their attraction from the general interest, eager and wholesome it may be, in their subjects, but a *prurient interest may* be excited and appealed to. . . .' (Emphasis supplied)

"We perceive no significant difference between the meaning of obscenity developed in the case law and the definition of the A.L.I., Model Penal Code, § 207.10 (2) (Tent.Draft No. 6, 1957), *viz.*:

" '. . . A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, i. e., a shameful or morbid interest in nudity, sex, or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters. . . .' See Comment, *id.*, at 10, and the discussion at page 29 et seq.' "