John PONTI and Alan Kutchera, a Limited Partnership d/b/a The Loading Zone, John Ponti, General Partner, and Roman J. Enders, d/b/a The Place, Plaintiffs,

v.

The CITY OF MADISON, as a municipal corporation of the State of Wisconsin, Eldon L. Hoel, as an individual and in his capacity as City Clerk, Leo J. Cooper, in his capacity as President of the City Council of the City of Madison and as an alderman and as an individual, and the following persons, in their individual capacities and as aldermen of the City of Madison, Dane County, Wisconsin, James P. Goulette et al., Defendants.

No. 70–C–211.

United States District Court, W. D. Wisconsin.

Nov. 25, 1970.

Bruce Protzmann, Madison, Wis., for plaintiffs.

Edwin C. Conrad, City Atty., Madison, Wis., for defendants.

JAMES E. DOYLE, District Judge.

The complaint in this action challenges the constitutionality of Section 9.-10(10) (d) 11(a), (b), (c), and (d),[1]

1. Section 9.10(10) (d) 11 provides:
"11. REGULATIONS FOR ENTERTAINERS AND EMPLOYEES.
"a. The following regulations shall be enforced in every establishment licensed under the provisions of this section:
"i. Entertainers may not have physical contact with customers or other entertainers during their act, performance or dance nor shall they entice customers into joining in the same.
"ii. The top portion of the costume worn by female entertainers or female employees shall be of a non-transparent material and must completely cover the breasts at all times. The lower portion of the costume must completely cover the mons pubis and genitals and the cleavage of the buttocks at all times.
"iii. The costume worn by male entertainers or employees shall be of non-transparent material and must completely cover the pubic area, genitals and cleavage of the buttocks at all times.
"b. No live entertainment of any nature shall occur between the hours of 12:45 A.M. and 4:30 P.M. on any licensed premises.
"c. Paragraph 'b' shall not apply to musical entertainment as long as that entertainment is not accompanied by dancing in any form.
"d. No licensee shall allow any conduct on his licensed premises in violation of this ordinance and such violation shall constitute grounds for revocation of his license by the Common Council according to Section 9.10(12) of the Madison General Ordinances."

and Section 9.11(10) (d) 9(a), (b), (c), and (d),[2] of the General Ordinances of the City of Madison. Accompanying provisions of the City Ordinances provide a procedure by which the City Council may consider and act upon complaints that Sections 9.10(10) (d) 11 or 9.11(10) (d) 9 have been violated. The sanctions include suspension or revocation of the beer or liquor license. (I will refer hereinafter to Sections 9.10(10) (d)11 and 9.11(10) (d)9 as "the disputed ordinance.")

Plaintiffs allege in their complaint, and defendants admit, that plaintiffs are the owners and managers of two licensed cocktail bars in which entertainment is provided in the form of dances by women; that the costumes frequently worn by the women dancers do not conform to the requirement of the disputed ordinance; and that at times during their acts, performances, and dances, the women dancers make physical contact with the customers in violation of the disputed ordinance.[3] In affidavits filed by plaintiffs in support of a motion for a preliminary injunction, plaintiffs allege, and it is not disputed, that prior to the adoption of the disputed ordinance they had been offering entertainment in the form of dances by women whose costumes would have violated the provisions of the disputed ordinance, had it then been in effect; that during June, 1970, they had given written assurances to the Mayor that if their licenses were renewed they would conform with the disputed ordinance which had then received preliminary approval but had not yet become effective; that they had given these assurances because they had been threatened by officials of the City that their licenses would not be renewed un-less the assurances were given; and that the licenses had then been renewed. An affidavit by the Mayor alleges that he refrained from exercising his veto over the renewal of the licenses only because he received the said assurances. It appears that the plaintiffs have not abided by said assurances. I find and conclude that there is presently a real controversy between the plaintiffs and the defendants with respect to the application of the disputed ordinance to the plaintiffs licensed establishment, except with respect to subsection (b) and (c), and with respect to subsection (a) insofar as it applies to employees other than entertainers.

Subsections (b) and (c) provide in substance that no live entertainment, except for musical entertainment not accompanied by dancing in any form,[4] shall occur on any licensed premises between the hours of 12:45 A.M. and 4:30 P.M. I find no allegation that in the past the plaintiffs offered such live entertainment during those hours, or that they presently do so, or that they intend to do so, or that they are threatened with prosecution under subsections (b) and (c). Accordingly, it appears that there is no genuine controversy presented here with respect to these provisions, and I decline to consider plaintiffs' challenge to their validity.

Subsections (a) (ii) and (a) (iii) govern the costumes of female and male "entertainers or employees." I construe this language to distinguish between those employees who are entertainers and those employees who are not entertainers. I find no allegation that in the past employees of the plaintiffs, other than entertainers, have worn costumes which would not have complied

---

2. The language of Section 9.11(10) (d) 9 is identical to that of Section 9.10(10) (d) 11. Together the two sections apply to establishments licensed by the city to sell alcoholic beverages by the drink.

3. This complaint was filed July 30, 1970. The disputed ordinance, except for an amendment relating to the time period between 12:45 A.M. and 4:30 P.M., to which I will refer later in this opinion, was adopted by the City Council June 9, 1970, approved by the Mayor June 30, 1970, and published July 10, 1970.

4. The exception was added in (c) by an amendment which became effective somewhat later than the effective date of the other provisions of the disputed ordinance.

with the disputed ordinance, or that any such employees presently are so costumed, or that plaintiffs intend that any such employees will be so costumed, or that plaintiffs are threatened with prosecution under subsections (a) (ii) and (a) (iii) because such employees are so costumed. Accordingly it appears that there is no genuine controversy presented here with respect to those provisions of subsections (a) (ii) and (a) (iii) which are applicable to employees other than entertainers, and I decline to consider plaintiffs' challenge to their validity. The remaining dispute is limited to subsections (a) and (d), having to do with the costumes of entertainers and with physical contact between entertainers and customers.[5]

■ The complaint states a cause of action under 42 U.S.C. § 1983. Jurisdiction is present under 28 U.S.C. § 1343(3).

The immediate issue is whether a preliminary injunction should issue, restraining the defendants from taking any action or commencing any proceedings against the plaintiffs, under sections (a) and (d) of the disputed ordinance, until final judgment is entered in this action on the merits.

■ I will consider the ordinance initially as if it were applicable to establishments other than those licensed to sell alcoholic beverages. So viewed, it would be clear that the regulation of costumes of entertainers would affect the area of free expression. Plaintiffs would have standing to challenge the breadth of the ordinance even though their own conduct may not be constitutionally protected; that is, even though their own conduct might be constitutionally proscribed by an ordinance drawn with the required narrowness and precision. Dombrowski v. Pfister, 380 U.S.

479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); N.A.A.C.P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); Thornhill v. Alabama, 310 U.S. 88, 60 S. Ct. 736, 84 L.Ed. 1093 (1940). There can be little doubt that the challenge would be successful. Presumably, the justification for such regulation would be sought in governmental power to deal with obscenity. If so, the ordinance would fail on two broad grounds. First, it would undertake to equate automatically with obscenity the exposure of certain parts of the body in the course of a dance or other form of entertainment, without any regard whatever for the dominant theme of the entire performance, without any regard whatever for contemporary community standards, and without any regard whatever for the presence or absence of redeeming social value. In short, it would fail the test of Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). Second, even if it were to be assumed that the exposure of certain parts of the body in the course of the dance or other form of entertainment were automatically to be equated with obscenity, the ordinance would fail because its application is not narrowly enough limited to the two constitutionally permissible goals or interests: protecting children from obscenity, or preventing assault by obscenity upon the sensibilities of unwilling adults. In an opinion entered November 24, 1970, in United States v. B & H Dist. Corp., D.C., 319 F.Supp. 1231 and for reasons stated at length therein, I have held that under Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), legislative prohibitions of obscenity must be directed only to these two permissible goals or interests.

The decisive issue in the present case appears to be whether the *Roth* doctrine and the *Stanley* doctrine as I have con-

5. Subsection (a) (i) contains the rather surprising provision that entertainers may not have physical contact with one another during their act, performance, or dance. There is no allegation here that entertainers at plaintiffs' establishments have such contacts with one another, and I do not consider the question, but it would be remarkable if singers, dancers, or musicians were to avoid any physical contact with one another during their performances.

strued it in *B & H Dist. Corp.,* are operative in a physical setting in which alcoholic beverages are being dispensed and consumed.

Counsel for the defendants has presented an impressive array of authorities for the proposition that the police power of the state, historically and in modern times, is a sweeping power as it affects all forms of commerce involving alcholic beverages. It is contended that this strong line of precedent compels the conclusion that government is free of the restraints of *Roth* and *Stanley* when it exercises its police power in dealing with conduct in a liquor sales establishment which exists only by virtue of a specific license conferred by government.

Counsel for the plaintiffs, on the other hand, presents a line of authority at least equally impressive and heavily emphasized by the Supreme Court of the United States, to the effect that when government undertakes to regulate forms of expression, it must proceed with that extreme care and precision reflected in *Roth* and *Stanley,* in the field of anti-obscenity legislation, and that it must not sweep protected forms of expression within its legislative prohibitions.

I am aware of no express precedent, binding upon me, by which this collision between two streams of constitutional authority is to be resolved.

However, I have concluded that the plaintiffs enjoy a reasonably good chance that they will ultimately prevail in their contention; that is, that the constitutional values implicit in the First Amendment guarantees of freedom of expression will prevail over the constitutional values implicit in the police power to regulate the liquor business.

I am mindful, of course, that there are distinctions to be made among different forms of dance, that classical ballet performed in a theater is more readily thought of as a form of expression entitled to First Amendment protection than certain forms of dance frequently performed in cocktail bars. For the present I restrict myself to two comments: (1) if there is a distinction to be drawn, it is difficult to draw; and (2) the disputed ordinance makes no effort whatever to distinguish among various forms of the dance.

I find and conclude that if the plaintiffs continue to present dance entertainment which violates the disputed ordinance, they face a serious and practical threat that their licenses will be suspended or revoked; and that the economic consequences of such a revocation would be difficult, if not impossible, to measure. I also find and conclude that plaintiffs enjoy a reasonably good chance to succeed in their contention that the disputed ordinance is so broadly drawn as to proscribe forms of the dance which are entitled to constitutional protection as forms of expression as well as to proscribe forms of the dance which may not be so entitled, and to succeed in their contention that the existence of such an overly broad prohibition is a deterrent to the exercise of expression through those forms of the dance which are entitled to such constitutional protection.

For the reason stated, and upon the basis of the entire record herein, it is ordered that, pending a final adjudication of the merits in this action, the defendants and their agents are hereby enjoined from enforcing against the plaintiffs the provisions of Section 9.10(10)(d) 11(a) and (d), and the provisions of Section 9.11(10) (d) 9(a) and (d), of the General Ordinances of the City of Madison.